JESSE BOATRIGHT v. THE CITY OF JACKSONVILLE, *et al.*

158 So. 42.

Opinion Filed December 1, 1934.

*Lawrence A. Truett* and *Walter C. Shea,* for Appellant;
*Austin Miller* and *John W. Harrell,* for Appellees;

*Hull, Landis & Whitheair* and *Winder H. Surrency,* as *amici curiae.*

DAVIS, C. J.—In the present case the City of Jacksonville, acting under the authority of Chapter 15772, Acts 1931, Laws of Florida, and Section 6 of Article IX of the Constitution of Florida as amended in 1930, proposed to extend and continue the obligation of certain of its outstanding bonded indebtedness by the issuance of a series of refunding bonds described as "City of Jacksonville Refunding Bonds, Third Issue of 1934," which it designed to be sold and the proceeds used to retire the outstanding indebtedness or, at the option of the existing bondholders, taken in exchange for the bonds to be refunded. To that end it adopted the necessary resolutions and took the required steps to have the proposed bonds judicially validated as lawful obligations of the City of Jacksonville in the premises. It also undertook to have adjudicated in the validation proceeding the nature, scope, character and extent of the city's obligations thereby proposed to be created or evidenced by the bonds in the form and based on the proceedings by which they are intended to be issued.

Upon appropriate proceedings in the Circuit Court wherein the appellant was allowed to intervene and contest the vali-

dation of the proposed bonds because of his status as a tax-payer and resident citizen owner of a homestead situate in the City of Jacksonville, the Chancellor decreed the proposed bonds to be valid, legal and binding obligations of the City of Jacksonville.

Also in said proceeding the Chancellor entered, as a part of his validation decree and incorporated therein, his declaratory judgment to the effect that the proposed refunding bonds are: proper obligations of the character described as refunding bonds within the purview of Section 6 of Article IX of the State Constitution as amended in 1930; that said refunding bonds do not, in view of Section 18 of Chapter 7659, Acts of 1917, and in consideration of Section 1 of Chapter 15255, Acts of 1931, enlarge upon the obligations of the original bonds, nor irrevocably pledge as a means for their payment any unauthorized additional sources of revenue to supplement or add to the renewed obligation of the bonds proposed to be refunded; that under the old bonds proposed to be refunded that the same revenues of the same municipal electric light plant as are obligated by the bonds here in controversy were, under the provisions of the hereinbefore cited acts, pledged to secure the original bonds in like force and effect as they are in this proceeding pledged to secure the proposed refunding bonds; that the proposed bonds are in law and in fact true and lawful refunding bonds within the purview and meaning of Chapter 15772, Acts 1931, and the Constitution of Florida; that the refunding bonds herein sought to be validated are of such character that they are not only obligations in themselves for what they purport to be on their face as well as under the statutes pursuant to which they are proposed to be issued, but are lawfully authorized extensions and continuations of the original obligation represented by the bonds that are refunded by them; that the original obliga-

tion of the earlier bonds is not extinguished by the refunding bonds herein proposed to be validated, but is merged into the proposed refunding bonds with like force and effect as if the original bonds had remained unrefunded by the issuance of said refunding bonds; that said proposed refunding bonds are therefore liens upon all and singular the taxable property within the corporate limits of the City of Jacksonville upon which the original bonds hereby sought to be refunded were lawful liens, and that therefore this issue of refunding bonds would constitute a mere continuance under the refunding bonds of the pre-existing lien of the old bonds hitherto imposed on homestead property as well as other taxable property situate within the City of Jacksonville; that this would be true notwithstanding the ratification by the electors at the General Election held on November 6, 1934, of the proposed amendment to the State Constitution known as additional Section 7 of Article X providing for a $5,000.00 tax exemption on homesteads owned by heads of families who are citizens of and reside in the State of Florida.

Boatright, the intervener, has appealed from the validation decree assigned as error (1) that the Court erred in finding and holding that the proposed refunding bonds are in law and in fact proper refunding bonds within the purview and meaning of Chapter 15772, Acts of 1931; (2) that the Court erred in holding that the proposed refunding bonds are authorized extensions and continuations of the obligations represented by the original bonds that are refunded by them, including the extension and continuation under the refunding bonds of the lien of the old bonds on homesteads as well as on other taxable property upon which the old bonds were liens; (3) that the Court erred in striking intervener's answer; (4) that the Court erred in validating and confirming the bonds described in the vali-

dation proceeding; (5) that the Court erred in holding that the bonds sought to be validated are refunding bonds; (6) that the Court erred in finding that if the said bonds are refunding bonds that they constitute a valid continuation and extension of the pre-existing tax lien on homesteads insofar as homesteads are concerned which are entitled. to the $5000.00 tax exemption provided for by additional Section 7 to Article X of the Constitution ratified at the General Election held November 6, 1934, which was the day before the validation decree in this case was entered herein on November 7, 1934.

. All matters directly brought into controversy pertaining to, or declaratory to, of the validity, nature, character, extent or scope of the legal obligation proposed to be evidenced or created by a projected series of bonds or similar securities proposed to be issued by cities, counties, districts and municipalities, are proper subjects for judicial inquiry, investigation and adjudication in statutory bond validation proceedings instituted and carried out under Sections 5103 C. G. L., 3296 R. G. S., *et seq.*, as we have held in the following cases decided by this Court; State v. City of Miami, 113 Fla. 280, 152 Sou. Rep. 6; State v. County of Citrus, 116 Fla. 676, 157 Sou. Rep. 4, State v. County of Sarasota, 117 Fla. 34-36, 157 Sou. Rep. 21-22, County of Bay, v. State, 116 Fla. 656, 664, 157 Sou. Rep. 1-12.

And insofar as a judicial decree may specially settle and decide particular issues relating simply to the nature, character or extent of the exact contractual obligation created by a particular issue of bonds after such matters shall have been properly brought into controversy, and thereafter actually considered by the 'Court in the course of its' judicial inquiry and investigation of such issues as are duly raised by appropriate pleadings, the decree rendered in such statutory validation proceedings is as conclusive in its declar-

atory findings as it is in its direct effect as a judgment granting or denying the petition for validation itself. This is so because the purpose of the validation statute was a remedial one. It was designed to have interjected and decided in a single judicial proceeding had in advance of the issuance and sale of proposed bonds, whether such bonds, if issued, would be valid for any purpose, and, if that question be put in issue, what the exact contractual obligation created thereby will be adjudged by the courts to be, in the event the bonds are actually issued and pass as negotiable instruments into the hands of *bona fide* holders pursuant to a negotiation and sale thereof by the petitioner obligor.

In this case the City of Jacksonville is undertaking to issue $445,000.00 of funding bonds to replace and retire an equal amount of presently outstanding bonded indebtedness that was made and that constitutes a general liability against the taxable property within the city. The object of the refunding proposal is the substitution of refunding bonds for divers previous issues of bonds authorized and outstanding againt the city, creating no new debt, but merely evidencing an extension or renewal, in a new form, of the original existing indebtedness, the obligation of which is limited to a renewal of the original obligation, accompanied by an agreed extension and continuation of the former pledge of the taxing power as a means of security for payment.

At the time the bonds to be refunded were issued, the charter and ordinances of the city pledged for the payment of each and every, all and singular, the said bonds, both principal and interest, the entire taxable property of the City of Jacksonville, to discharge which pledge it was made the legal as well as contractual duty of the Mayor and City Council of the City of Jacksonville, to levy and to collect annually a special tax upon all of the taxable property within the corporate limits of the said city as might be nec-

essary to pay the interest on said bonds and to provide a sinking fund for the payment thereof. Section 15 of Chapter 6357, Acts of 1911; Section 18, Chapter 7659, Acts of 1917, and Section 1, Chapter 15255, Acts of 1931.*

It had also been contractually agreed as to some of the bonds at least, that for the additional protection of the holders of said bonds and the speedier redemption thereof, that upon failure of the City of Jacksonville to meet any of the interest coupons or principal of said bonds, within ninety

*For special statutes of the State of Florida constituting the system of special and local laws providing for the government of the City of Jacksonville and prescribing its duties, jurisdiction and powers see: Chapters 3775 and 3776, Acts 1887; 3952 and 3953, Acts 1889; 4300, 4301 and 4239, Acts 1893; 4498, 1895; 4871 and 4872, Acts 1899; 3953, 5061, 5065, 5066 and 5096, Acts 1901; 5347, Acts 1903; 5404, 5501 and 5502, Acts 1905; 5810, Acts 1907; 6356 and 6357, Acts 1911; 6415 and 6416, Special Session Acts 1912; 6701, 6705 and 6706, Acts 1913; 7174, 7175 and 7177 (not ratified), Acts 1915; 7656, 7657, 7658 and 7659, Acts 1917; 8277, 8278, 8279, 8280, 8281 and 8282, Acts 1919; 8535, 8969, 8970, 8971, 8973, 8974, 8975, 8976, 8977, 8978 and 8979, Acts 1921; 9768, 9783, 9784, 9785, 9786 and 9788, Acts 1923; 10702, 10703, 10704, 10705, 10706, 10707, 10709, 10710, 10711, 10712, 10-713, 10714, 10715, 10716, 10717, 10718, 11559, 11560, 11561, 11,-563 and 11565, Acts 1925; 12875, 12876, 12877, 12878, 12879, 12,-880, 12881, 12882, 12883, 12884, 12885, 12886, 12887, 12888, 12,-889, 12890, 12892, 12893, 12894, 12895, 12896, 12897 and 12900, Acts 1927; 13833, 14131, 14132, 14133, 14134, 14135, 14136, 14,-137, 14138, 14139, 14140 and 14608, Acts 1929; 14715, 15254, 15,-255, 15256, 15257, 15258, 152544608, Acts 1929; 14715, 15254, 15,-264, 15265, 15266, 15267, 15269, 15260, 15261, 15262, 15263, 15,-650, 15706 and 15815, Acts 1931; 16487, 16488, 16489, 16490, 16,-491, 16492, 16493, 16494, 16495, 16496, 16497, 16498, 16499 and 16500, Acts 1933, Laws of Florida. See also Sections 1947 R. G. S. (1920), *et seq.*, relating to cities and towns which General Laws are referred to in some of the Special Acts and expressly made applicable to the City of Jacksonville in certain particulars.

days after maturity and the demand for payment, that the electric light plant and all other public property of the city capable of yielding revenue should be subject to being taken into possession, held, operated and controlled for the benefit of the security holders until the payment of all sums due upon said bonds, and that the rents, proceeds, issues and profits thereof, after paying the necessary legitimate expenses of operating the same, should be turned over to the City Treasurer on account of a redemption fund for said bonds, to be applied to the payment of the principal and interest of the same.

The resolution underlying the refunding bonds involved in this case, recognizes as already pledged to the retirement of the bonds to be refunded "the entire taxable property of the City of Jacksonville applicable to any of its outstanding date of issuance of said bonds. The resolution also recognizes the fact that under the existing charter provisions of the City of Jacksonville aplicable to any of its outstanding bonds should they presently default, that the net revenues of the electric light plant of the City of Jacksonville would be subject to judicial sequestration by the city's creditors in the event of litigation. So the resolution consequently provides in terms for the issuance of refunding bonds that will contain, in addition to a renewed pledge of the city's taxable resources, an express agreement on the city's part to the effect that all net revenues derived from the city's electric light plant, after paying the necessary cost of operation and other prior charges to which such revenues have been pledged heretofore, will continue to be conserved and made available for the payment of the interest and the redemption of the principal of the said refunding bonds, as is now provided for in its charter.

The Federal Constitution provides that no state shall pass any law impairing the obligation of contracts. U. S. Con-

stitution, Article I, Section 10. This prohibition applies to a provision in or amendment to a state constitution, as well as to statutes passed by the Legislature. New Orleans Gas-Light Co. v. Louisiana Light & Heat Producing & Mfg. Co., 115 U. S. 650, 6 Sup. Ct. Rep. 252, 29 L. Ed. 516; Gray, Secretary of State, v. Moss, 115 Fla. 701, 156 Sou. Rep. 262.

The Federal Constitution is the "Supreme Law of the Land" and the judges in every state are bound thereby, "anything in the constitution or laws of any state to the contrary notwithstanding." U. S. Constitution, Article VI.

A municipal security holder's contract is that authorized by the constitution and statutes of the state in- force at the time the security was issued, as expressed in the bond or other evidence of the debt construed in connection with the ordinance or resolution providing for same to be issued. It also embraces all of the general laws of the state in force and effect at the time the security contract was made, together with the legal right to have levied and collected the special taxes pledged by authority of law as a revenue resource for the discharge of the contracted debt according to its provisions for payment.

A municipal security holder's contract being that authorized to be made under the constitution and statutes of the state in force at the time the security is issued, the actual agreement entered into must be expressed or implied in the language of the bond or other evidence of the debt construed in connection with the ordinances or resolution duly adopted as the authority for the securities to be issued as lawful obligations of the obligor who becomes subscriber thereto. The obligation of the contract, however, is the law or duty which at the time the contract was made bound the parties to the performance of their agreement and made such agreement legally enforceable according to its pro-

visions. To ascertain that obligation reference must be had to the constitution and all of the laws of the state in force at the time the contract was made, as well as to the particular statute under which the obligation was authorized and created in its particular form. This is so because whatever the obligor has promised and undertaken to perform, must be measured by the standard of legal duty imposed by the constitution of the state and the particular laws in force *at the time the contract was solemnized*, as expressed in the terms of the contract interpreted or construed according to their settled legal meaning *at that time*. And any attempted change in either the constitution, or in the statutes of a state, that tends to embarrass, hinder, delay, retard or postpone the performance or enforcement of any of the legal duties devolving upon an obligor under his contract, is regarded as an impairment of the contract's obligation to the extent it may thus operate to embarrass, hinder, delay, retard or postpone, though not wholly frustrate, legally created contractual duties that would otherwise be enforceable in a judicial proceeding brought on the contract.

A leading case on this subject is that of United States v. Quincy, 71 U. S. (4 Wall.) 535, 18 L. Ed. 403. It involved a situation where the Legislature of Illinois had authorized the City of Quincy to issue bonds and to levy a special annual tax upon the real and personal property in the city to pay the annual interest. The city refused to pay relator's coupons or to levy the necessary tax. The coupon holder sued and recovered judgment and brought mandamus proceedings to compel the city to pay, or, if it had no unappropriated funds, to levy a sufficient tax for the purpose. The answer of the city authorities set up a Legislative Act of November, 1863, authorizing the City Council to levy taxes for street lighting, schools, etc., and a tax to pay the

debts and meet the general expenses of the city, not exceeding fifty cents on each $100 valuation, and repealing all other tax laws except those relating to their collection, and to streets, alleys and licenses. They also alleged that the full amount of the taxes thus authorized was in process of collection, that the city's taxing power was exhausted, and that the tax of fifty cents on each $100 of assessed valuation would not be sufficient to pay the annual expenses for the year 1864, and the city's indebtedness. Justice Swayne, in delivering the opinion, which was unanimous, said:

"It is well settled that a State may disable itself by contract from exercising its taxing power in particular cases * * * It is equally clear that where a State has authorized a municipal corporation to contract, and to exercise the power of local taxation to the extent necessary to meet its engagements, the power thus given cannot be withdrawn until the contract is satisfied. The State, and the corporation, in such cases, are equally bound. The power given becomes a trust which the donor cannot annul, and which the donee is bound to execute; and neither the State nor the corporation can any more impair the obligation of the contract in this way than in any other. The laws requiring taxes to the requisite amount to be collected, in force when the bonds were issued, are still in force for all the purposes of this case. The Act of 1863 is, so far as it affects these bonds, a nullity. It is the duty of the city to impose and collect the taxes in all respects as if that Act had not been passed. A different result would leave nothing of the contract, but an abstract right—of no practical value—and render the protection of the Constitution a shadow and a delusion."

The conclusion to be deduced from that case is that so long as a municipality continues to exist, laws or state con-

stitutional amendments are void which are either designed to restrict, or which have the tendency to withdraw, any portion of the city's existing power of taxation to the prejudice or impairment of the obligation of its contracts made upon the faith of a pledge expressly or impliedly given at the time its contracts were entered into, that the municipality's taxing power as then defined by law would continue to be exercised until the contract should be discharged. United States v. New Orleans, 103 U. S. (13 Otto) 358, 26 L. Ed. 395.

In the case of City of Clearwater v. State, *ex rel.* United Mutual Life Ins. Co., 108 Fla. 623, 147 Sou. Rep. 459, this Court said:

"Where bonds have been issued by a municipality with a provision for the levy of stipulated taxes to provide for their payment, the fund contracted to be raised by the agreed taxes is the foundation upon which the bonds themselves rest. The annual tax is the security offered to the creditors who take bonds under laws which constitute a special agreement on the part of the public corporation debtor to provide for their payment according to terms. And as the Supreme Court of the United States has said in the case of Louisiana v. Pilsbury, 105 U. S. 278, 288, 26 L. Ed. 1090: 'The annual tax * * * could not be afterward severed from the contract without violating its stipulations, any more than a mortgage executed as security for a loan could be subsequently repudiated as forming no part of the transaction.' In other words, such bonds are but the present funding of the necessary future taxes contracted to be levied in order to pay them off in due course, as to the stipulated principal and interest. Godchaux Co. v. Estpopinal, 142 La. 812, 77 So. 640.

"* * * * Bonds cannot be issued for purposes for which taxes cannot be levied and bonds when issued are merely

in anticipation of the taxes agreed to be provided to pay them."

Long years prior to the case just cited, this Court had declared in Columbia County v. King, 13 Fla. 451:

"The laws in force at the time of making a contract, and in pursuance of which the contract is made, enter into and form a part of the contract, as if they were incorporated into it, including those which affect its validity, construction, discharge and enforcement; and when a county issues its bonds under a statute which provides the time and manner of discharging them, as by levying an annual tax, the Legislature cannot, by repealing the Act or changing it, limit the amount of taxes to be levied to a rate insufficient to raise the amount necessary to meet the obligation, unless other adequate means are provided. Such a law impairs the obligation of the contract."

And it was held in Ralls County v. Douglass, 105 U. S. 728 (text 733), 26 L. Ed. 957, that all laws of a State, passed after bonds are issued, purporting to take away the power to levy taxes to meet their payment, are invalid.

And, in such a case, that the adoption of a new constitution prohibiting the levy of a tax to meet the city's outstanding obligations would violate the obligation of such a contract. Sawyer v. Parish of Concordia, 12 Fed. 754.

The United States Circuit Court of Appeals for the Fifth Circuit, in which the State of Florida is located, in Town of Samson v. Perry, 17 Fed. (2nd) 1, had before it a case where when certain bonds were issued by the Town of Samson, Alabama, the State law required that property to be assessed for taxation at its fair cash market value. Later, in 1911, the Legislature passed an Act providing that "the taxable property within this State shall be assessed, for the purpose of taxation, at 60 per cent. of its fair and

reasonable cash value." The Court, speaking through Circuit Judge Walker, said:

"The above-mentioned Act of 1911 restricted the municipality's power to tax by making the subject of taxation 60 per cent. of the cash value of taxable property, instead of 100 per cent. of such value, which before was the subject of taxation. A result was to exempt from taxation 40 per cent. of what previously was taxable. As to the antecedent debts of the municipality, the Act treating such exemption is invalid under Section 10, Article I of the Constitution, forbidding a state to pass any law impairing the obligation of contracts."

The Supreme Court of Appeals of West Virginia, in Bee v. City of Huntington, 171 S. E. Rep. 539, was considering a situation presented by the passage of a constitutional amendment of that State, adopted after the issuance of the city's outstanding bonds, whereby assessments upon certain specified classes of property, including homesteads, were limited, for all purposes, including previous bonded debts, to certain specified rates. It was held that the authorities must provide for the current requirements of existing contractual obligations, before levying for current governmental purposes, whether under the limitation upon the taxing power there was any power left to tax for general governmental purposes or not, since the outstanding legal obligations must be discharged, regardless of statutory or constitutional limitations upon taxation.

The Supreme Court of Arkansas has held that a legislative Act excluding from a road improvement district, after bond obligations for road improvements were incurred, half of the lands originally embraced therein, thus enlarging the burdens of such obligations upon lands remaining in the district, conflicts with the constitutional provision prohibiting laws impairing the obligation of contracts.

Bacon v. Road Improvement Dist. No. 1, 157 Ark. 309, 248 S. W. Rep. 267.

Similarly, the Supreme Court of Arkansas holds that legislation detaching material portions of territory from existing school districts is void as to bonds issued by the original districts, in that the effect thereof would be to defeat or impair the rights of the purchasers of the bonds in plain violation of both the State and Federal Constitutions. Chicago Title & Trust Co. v. Hagler School Dist. No. 13, 178, Ark. 443, 12 S. W. Rep. (2nd) 881.

It was held over fifty years ago by the Supreme Court of the United States that a provision of the Constitution of the State of North Carolina, and statutes enacted in pursuance thereof, which exempted from sale under execution or other final process for the collection of debts, the homestead of the debtor to the value of $1000.00, were void as to executions for debts contracted before the adoption of such Constitution, as repugnant to Article I, Section 10, of the Constitution of the United States, which ordains that no State shall pass any law impairing the obligation of con-. tracts. Edwards v. Kearzey, 96 U. S. (6 Otto) 595, 24 L. Ed. 793.

In the case of Gilman v. City of Sheboygan, 2 Black (U. S.) 510, 17 L. Ed. 305, the proposition was advanced that in order to make out the violation of a vested right or the unconstitutional impairment of the obligation of a municipal bond by the enactment of a statute adding to the exemptions of properties from taxation after the bond was issued, it would first have to be shown that the contract authorizing the borrowing of the money, the issuing of the bonds and the levying of a tax upon all the property of a city for the purpose of paying the debt, had the legal effect of an engagement against the subsequent modification and removal of taxes, and the exemption of property therefrom,

as an ordinary exercise of the power of state sovereignty to pass laws from time to time statutorily defining the subjects upon which taxes could be levied.

In that case certain bonds had been issued by the City of Sheyboygan, Wisconsin, pledging a tax upon all the city's taxable property for their payment. The bonds had · been issued, however, admittedly subject to a provision of the Wisconsin Constitution reading as follows:

' "The rule of taxation shall be uniform, and taxes shall be levied upon such property *as the Legislature shall prescribe.'"* Section 1, Article VIII, Const. Wisconsin (Italics supplied).

The holding of the court was that since the constitution and laws of Wisconsin had authorized the municipality to borrow money and to issue its bonds therefor, and to levy taxes upon all the taxable property of the city for the purpose of paying them, that the imposition, modification and removal of taxes and the exemption of property therefrom was, under the general and continuing provision of the Constitution of Wisconsin above quoted, simply an ordinary exercise of the power of state sovereignty *impliedly reserved in the contract itself.**

---

*In Florida the rule of the above case would be applicable to any and all exercises of the reserved constitutional power of the Legislature preserved to it under Section 1 of Article IX of the State Constitution to declare what particular properties might, from time to time, be exempted by law for municipal, educational, literary, scientific, religious or charitable purposes. Such express power to pass laws from time to time specifying exemptions of property from taxation for certain specified purposes having been reserved in Section 1 of Article IX as to any and all exercises of the taxing power, whether to pay debts or otherwise, it would follow that no engagement could be lawfully made in derogation of the future exercise of the reserved power.

In the case of Arkansas Southern Ry. Co. v. Louisiana & Arkansas Ry. Co., 218 U. S. 431, 54 L. Ed. 1097, 31 Sup. Ct. Rep. 56, it was expressly recognized that a state could limit its control over the power of a municipal body to tax, by authorizing it to make contracts on the faith of its existing powers (citing as authority United States v. New Orleans, 103 U. S. 358, 26 L. Ed. 395; Louisiana *ex rel.* Hubert v. New Orleans, 215 U. S. 170, 30 Sup. Ct. Rep. 40, 54 L. Ed. 144) as defined by law at the time of the issuance of a municipal obligation, but the decision of that case was made to turn upon the proposition that in that particular case there was no contract made by the Parish (County) there involved that implied that any such power had ever been exercised.

And it is undoubtedly the law, as was pointed out in that decision by the Supreme Court of the United States, that where a sovereign state has vested in its Legislature ordinary legislative power to pass laws on the subject of taxation and to define what shall be considered taxable property within the meaning of those laws from time to time, that statutory authority given at a particular time, or for a particular occasion, to a municipality to incur a debt and to promise and levy in future years a tax to pay it, does not operate as a limitation upon the reserved legislative power of the state to enact future laws declaring what shall be deemed taxable property when the time comes to levy a promised tax—at least so long as the power to define taxable property is enacted as a general regulation and does not appear to be aimed at a deliberate evasion of the obligation to provide for payment of the public debts.

But under the Constitution of the State of Florida in force and effect when the debts of the City of Jacksonville were incurred, the Legislature of this State had no reserved power retained by it to declare what should be taken and

· held to be taxable property for the purposes of the promised tax authorized to discharge its obligations. In the State of Florida the definition of taxable property had been set forth in the Constitution itself. Therefore it cannot be urged on the authority of Gilman v. Sheboygan, *supra*, and Arkansas Southern Railway Company v. Louisiana & Arkansas Railway Company, *supra,* that the promise of the City of Jacksonville to levy future taxes to pay its debts was made subject to any acknowledged reservation of power in the Legislature to make from time to time sovereign determinations as to what the taxable property of the State, or of any of its political subdivisions, should be.

So at the time the debts of the City of Jacksonville were incurred under authority of a statute providing for a pledge of the city's taxing power to pay them, the power of the Legislature to make sovereign determinations of what property should be deemed to be taxable property within the purview of the exercise of the state's direct or delegated taxing power, was a limited one—limited by the provisions of Section 1 of Article IX of the Constitution to a reserved power to define, from time to time, what property should not be deemed taxable property when used for educational, municipal, literary, scientific, religious or charitable purposes only. It was also limited by the express provisions of Section 1 of Article X of the State Constitution providing that no homestead as therein defined, should be exempt from sale for taxes and assessments.

So when the Legislature in past years duly authorized the City of Jacksonville to issue its bonds and to pledge for the payment of the same a promised tax levy upon all of the taxable property situate within the city, there was neither an express nor an implied reservation of general legislative power to provide for exemptions from taxation except by laws providing for exemptions for the particularly de-

fined purposes enumerated in Section 1 of Article IX of the State Constitution. Hence the rule of law enunciated and applied in the two cases of Gilman v. City of Sheboygan, *supra,* and Arkansas Southern Ry. Co. v. Louisiana & Arkansas Ry Co., *supra,* can have no proper application in the State of Florida where the Constitution itself set forth its own definition of taxable property and where, as a consequence of its so doing, any contract pledging a municipality's power to pay its debts must be construed as a pledge of the city's taxing power to tax property as defined in the Constitution at the time the pledge was given. This is so because taxable property having been constitutionally defined for the purpose of applying the taxing power, the Legislature would be without power to pledge the taxing power to any greater or to any less extent than to the taxable property defined in the organic law. And by the same token, since the Legislature could have had no constitutional authority to empower a city to levy taxes upon any classification of taxable property different from that specified in Section 1 of Article IX of the Constitution, including any laws passed thereunder providing for exemption for educational, municipal, literary, scientific, religious and charitable purposes, *and no other purposes,* any contract obligation heretofore made that involved a pledge of the taxing power at all, must be construed as a pledge of the taxing power as applied to the whole class of taxable property as then defined in the State constitutional provision aforesaid.

We are forced to the conclusion, therefore, that whatever pledge of the taxing power of the City of Jacksonville was incorporated into the obligation of its bonds heretofore issued, was essentially a pledge of the taxing power then delegated by the Legislature to the City of Jacksonville to the extent necessary to enable it to pay its debts. Such delegated taxing power must be construed as a power to tax

neither more nor less than what the Constitution of the State of Florida at that time defined as taxable property. This is so because the constitutional definition of taxable property was set forth in the Constitution for the purpose of prohibiting taxation upon any other basis than that specified in the constitutional definition. Therefore, since the Legislature at the time it conferred its power of taxation upon the City of Jacksonville to enable it to pay its bonds was without authority to expressly condition, reserve or withhold any part of that power as to any particular class of property constitutionally defined as taxable property within the purview of the exercise of the taxing power, it is axiomatic that a reservation that could not have been expressly made in a statute, cannot be now implied because of its absence from the statute, or by reason of the fact that the statute is silent on the subject.

We come now to a consideration of the effect of the subsequent change made by the constitutional amendment in the definition of taxable property, when the obvious effect of the change of the definition is to withdraw from the already pledged tax resources of a debtor municipality of this State, a substantial part of the taxing power theretofore pledged for payment of the city's debt.

That no such material change can be made in existing laws or constitutional provisions to the prejudice of creditors by releasing a part of the taxing power already obligated, is conclusively settled by the opinion of Mr. Chief Justice MARSHALL in Sturges v. Crowinshield, 4 Wheat. 122 (text 197-198), 4 L. Ed. 529:

"What is the obligation of a contract and what will impair it? It would seem difficult to substitute words which are more intelligible, or less liable to misconstruction, than those which are to be explained. A contract is an agreement in which a party undertakes to do, or not to do, a

particular thing. The law binds him to perform his undertaking, and this is, of course, the obligation of his contract. * * * any law which releases a part of this obligation must, in the literal sense of the word, impair it. * * * But it is not true that the parties have in view only the property in possession when the contract is formed, or that its obligation does not extend to future acquisitions. Industry, talents, and integrity constitute a fund which is as confidently trusted as property itself. Future acquisitions are, therefore, liable for contracts and to release them from this liability impairs this obligation."

That, in cases where no reservation of any kind appears, a state's right to tax, or to exempt from taxation, any particular piece of property, or class of property, can be validly and effectually contracted away by one Legislature as against the power of a subsequent Legislature, so as to bring the contract concerning the exercise of the state's taxing power, within the protection of Section 10 of Article I of the U. S. Constitution forbidding the impairment of the obligation of contracts duly made on authority of one legislative Act by Acts of legislation enacted by a subsequent Legislature, or by the people themselves in the form of an amendment to their organic law, has been expressly recognized by this Court in a case decided as long ago as 1876. See Atlantic & Gulf R. Co. v. Allen, 15 Fla. 637 (663).

In that case the argument was made, as it is made in this case, that since the exercise of a state's taxing power is essentially a sovereign one, no mere private contract created by authority of one legislative Act and asserted against the state can ever be allowed to prevail as against a state's sovereign right to exercise in subsequent years, its inherent sovereign powers of taxation or to exempt from taxation as it might see fit, even in a case where it is admitted that neither the contract as made, nor the Constitution or laws

under which it was entered into, reserved or attempted to reserve any of the State's sovereign powers to subsequently legislate to the contract's impairment.

Mr. Justice WESTCOTT of this Court, in delivering the Court's opinion denying the validity of any such contention, said:

"The tax here levied and proposed to be collected is an *ad valorem* tax upon the entire property, and *if it is higher* than one-half of one per cent. upon the annual net income derived from the property, it is unauthorized, unless this original exemption in the charter was a privilege granted, which could be withdrawn, instead of a contract of effective obligation upon the State. In Wilmington Railroad v. Reed, 13 Wall. 264, it is held by the Supreme Court of the United States that a charter to a railroad company, containing such an exemption as is here expressed, is a contract, and a law subsequently passed, laying a tax inconsistent with the exemption, violates the obligation of the contract, and is void. The same rule applies to the Acts of a constitutional convention impairing the obligation of a contract. Such action is void. Whatever doubt may have once existed on this question, it is now settled by the repeated decision of the Supreme Court of the United States to the effect stated, and it would be a useless expenditure of words to discuss the matter here. We think this case comes clearly within the decision in 13 Wall. 264.

I will, however, say for myself, that as an original proposition, I would not hesitate to decide that the right to tax any particular piece of property cannot be made the subject of a perpetual exemption, binding as a contract, by one Legislature as against the power of a subsequent one. There are, in my judgment, many entirely satisfactory reasons why it cannot be. The essential elements of sovereignty necessary to the perpetuation of government cannot be made

the subject of a permanent grant by the Legislature. If there is power to exempt one piece of property from taxation forever, there is power to exempt all, and the existence of this power to this extent involved the destruction of the State. If there is any limitation upon the power, it must be an entire limitation resulting from the nature of the subject. This matter is, however, no longer an open question. Judicial officers of a State must follow the repeated expression of an opinion by the Supreme Court of the United States as to what is the obligation of a contract and what constitutes a contract within the meaning of the Constitution of the United States."

And in 1933 this Court had before it for determination the case of the State *ex rel.* Buckwalter, v. City of Lakeland, 112 Fla. 200, 150 Sou. Rep. 508, wherein it was argued on behalf of the respondents that the sovereign power of the State of Florida to at any time limit, regulate and modify the procedure of its own courts, was sufficient to sustain the constitutionality of an Act of the Legislature (Chapter 16075, Acts 1933) that undertook to so regulate and change the common law remedy of mandamus after the city's bonds had been issued, as to deprive the bondholder relator in that case of a part of the remedy by mandamus that he had at the time the bonds were issued.

This Court, however, declared the Act unconstitutional, and speaking through Mr. Justice BUFORD, cited the case of Selover, Bates & Co. v. Walsh, 226 U. S. 112, 33 Sup. Ct. Rep. 69, 57 L. Ed. 146, among others, and said:

" 'It is elementary that the obligation of a contract is the law under which it was made.' * * * Senate Bill No. 63 attempts to impair that obligation and to so change it that the coupon holder may only have coerced by writ of mandamus the payment of a part of his claim and may be relegated to future and different remedy to procure the bal-

ance. * * * There appears to us no doubt that this legislative Act contravenes Section 10 of Article I of the Constitution of the United States."

And so it is that the obligation of a contract pledging the exercise of the taxing power as security for its performance must, in the absence of a reservation to change it expressly or impliedly reserved in the contract, or in the law under which it is made, must be the laws of taxation under which the pledge was made at the time it was made.

Added Section 7 to Article X of the Constitution was adopted at the general election held November 6, 1934, and is as follows:

"Section 7. There shall be exempted from all taxation, other than special assessments for benefits, to every head of a family who is a citizen of and resides in the State of Florida, the homestead as defined in Article 10 of the Constitution of the State of Florida up to the valuation of $5,000.00; provided, however, that the title to said homestead may be vested in such head of a family or in his lawful wife residing upon such homestead or in both."

But said amendment to the Constitution exempting homesteads from all taxation other than special assessments for benefits, was intended to exempt homesteads from taxation only so far as it may be done without violating the Federal Constitution which is the dominant law in the premises. See Gray v. Moss, 115 Fla. 701, 156 Sou. Rep. 262; Gray v. Winthrop, 115 Fla. 721, 156 Sou. Rep. 270; Osborne v. State, 33 Fla. 162, 14 Sou. Rep. 588, 25 L. R. A. 120, 39 Am. St. Rep. 99, 164 U. S. 650, 17 Sup. Ct. Rep. 214, 41 L. Ed. 586.

If the amendment to the State Constitution should be held to be so framed or so interpreted as to show an intent to violate the paramount Federal Constitution, it would render the exemption inoperative. So no such construction or

interpretation should be indulged in where a construction consistent with the paramount Federal Constitution is permissible under the language of the amendment.

The provision of Section 1 of Article X of the Constitution that homestead property shall not be "exempt from sale for taxes or assessments" was in force when the bonded debt of the counties, districts and municipalities of the State was incurred. And added Section 7 of Article X does not make manifest an organic intent, or warrant an inference of an organic intent, to exempt homesteads from taxation when to do so would violate the paramount Federal Constitution. Section 10 of Article I, U. S. Constitution.

: The State of Florida has no bonded indebtedness.

Amended Section 6 of Article IX of the Florida Constitution continues the former organic provision that State bonds may be issued "only for the purpose of repelling invasion or suppressing insurrection." And recognizing the existing statutory authority of counties, districts and municipalities to issue original and refunding bonds for their respective public purposes payable by taxation in the several units respectively, amended Section 6, Article IX, requires the statutory authority of taxing units to issue bonds evidencing an original debt, to be "approved by a majority of the votes cast in an election in which a majority of the freeholders who are qualified electors residing in such counties, districts or municipalities, shall. participate, to be held in the manner to be prescribed by law." But this limitation "shall not apply to refunding bonds issued exclusively for the purpose of refunding the bonds or the interest therein of such counties, districts or municipalities."

Thus the Constitution expressly recognizes the necessity for, and contemplates the issue of, refunding bonds to refund outstanding bonds of counties, districts, and munici-

palities, in order to conserve existing economic and fiscal conditions of the taxing units in the State.

Refunding bonds of governmental units are designed to project into the future a portion of the burdens of taxation and thereby preserve the utility of valid bond obligations. The obvious purpose of amended Section 6 of Article IX is to authorize an extension of the existing debt paying obligation over future periods, upon the same property liable to taxation for the payment of such obligations, in order to lighten annual tax burdens without impairing the integrity of statutory contract obligations.

This Court in previous cases treating the subject of refunding bonds, their attributes and characteristics, has held that refunding bonds create no new debt, but merely evidence an extension or renewal, in a new form, of the original existing indebtedness, which original indebtedness is not extinguished by, but is merged into the refunding bonds, with like force and effect as to obligation as if the original bonds had remained unrefunded by the issuance of such refunding bonds. State, *ex rel.* Pinellas County, v. Sholtz, Governor, 115 Fla. 561, 155 Sou. Rep. 736; Sullivan v. City of Tampa, 101 Fla. 298, 134 Sou. Rep. 211; State v. City of Miami, 100 Fla. 1388, 131 Sou .Rep. 143; State v. City of Okeechobee, 99 Fla. 617, 127 Sou. Rep. 339; State v. City of Miami, 116 Fla. 517, 157 Sou. Rep. 13; Juvenal v. Dixon, 99 Fla. 936, 128 Sou. Rep. 27; State v. Special Tax School District No. 5, Dade County, 107 Fla. 93, 144 Sou. Rep. 356; State v. City of Miami, 103 Fla. 54, 137 Sou. Rep. 261; State of Florida v. County of Citrus, 116 Fla. 676, 157 Sou. Rep. 4; County of Bay v. State of Florida, 116 Fla. 656-664, 157 Sou. Rep. 1, 12. We reaffirm that principle in this case.

In accord with the intent and purpose of Amended Section 6 of Article IX, the statutory provisions of Chapter

15772, Acts of 1931, relative to refunding bonds, provide for the exchange of the original bonds for the refunding bonds, as well as the sale of refunding bonds for the purpose of raising funds with which to retire the original bonds. To accomplish its purpose in this particular, the statute also requires *ad valorem* tax levies, as previously authorized for the original bonds, to be continued to meet the requirements of the refunding bonds. Thus Chapter 15772, *supra,* recognizes the continuing obligation of the original bonds and the right and duty to levy sufficient taxes upon all taxable property in the unit to pay the obilgation evidenced by the refunding bonds, to the same extent as was provided by the Constitution and laws of the State in force and effect when the original bonds were issued.

Hence the obligation of authorized refunding bonds issued pursuant to amended Section 6 of Article IX and under Chapter 15772, Acts of 1931, for the purpose of refunding the outstanding indebtedness of counties, cities, districts and other political subdivisions of the State, being limited simply to a renewal of the original obligation for a new period of duration, it follows that if added Section 7 of Article X of the Constitution adopted at the General Election, held November 6, 1934, cannot constitutionally operate to exempt homestead property from continuation of the previously authorized taxation pledged to support such bonds as were outstanding at the time said amendment was adopted, said added Section 7 of Article X of the Constitution does not operate to exempt homesteads from continued taxation for the support of refunding bonds which under Section 6 of Article IX as amended, are in contemplation of law simply a renewal and continuation of the old obligations.

Added Section 7 of Article X of the Constitution is in *pari materia* with amended Section 6 of Article IX of the same organic instrument. And being in *pari materia,* added

Section 7 of Article X does not expressly. or impliedly repeal or modify the refunding provisions of amended Section 6 of Article IX of the Constitution of Florida which were designed to preserve and declare the unimpaired right of counties, districts and municipalities to thereafter issue refunding bonds to refund bonds and interest thereon which were outstanding valid obligations of the several counties, districts and municipalities of this State at the time when said added Section 7 of Article X was ratified as a part of the constitution.

It is well known to the people and to the Legislature, and is judicially noticed by this Court, that a large number of counties, taxing districts and municipalities of this State were, at the time added Section 7 of Article X was ratified, heavily burdened with bonded and other debts of a similar description, which they are unable to pay upon the due date, but which they were likely able to renew and extend by postponing the date of maturity and payment through the process of refunding the same under Chapter 15772, Acts of 1931, and Section 6 of Article IX of the Constitution as amended.

The fact that the ratification of added Section 7 of Article X as a part of the Constitution of Florida could not operate to impair the taxing power already pledged for the payment of outstanding bonds at the time the Homestead Exemption Amendment was adopted, was fully made known to the electors of Florida in advance of ratification. See Gray, Secretary of State, v. Moss, 115 Fla. 701, 156 Sou. Rep. 270, where it was pointed out that the ratification of House Joint Resolution No. 20 was an amendment to Article X of the Constitution by adding additional Section 7 thereto, was not to be construed as having the effect of discharging homesteads from liability to continued ad valorem tax levies

necessary to pay all outstanding indebtedness due by counties, municipalities and taxing districts of the State at the time of ratification.

Thus the proposed Homestead Exemption amendment was ratified by the people in the light of the construction that had been already judicially put upon it by this Court, and such construction therefore becomes as much a part of the amendment as if it had been expressly set forth therein in so many words. And had this Court ruled otherwise, it would have caused the proposed amendment to the State Constitution to stand in conflict with Section 10 of Article I of the Federal Constitution, and thereby have destroyed its legal efficacy as an amendment to the Constitution for any purpose.

In the State of West Virginia where a constitutional amendment was adopted limiting tax levies to a specified aggregate amount, it has already been held that the issuance of refunding bonds to retire existing road bonds did not create "new indebtedness," and that levies of taxes to provide debt service for the refunding bonds might be laid, despite the constitutional limitation as to millage, as if the refunding bonds were the original bonds, and that such could be done notwithstanding the fact that the tax levies for the refunding bonds would exceed the organic limitation as to rates specified in a constitutional amendment adopted after the issuance of the original bonds, but prior to the issuance of the proposed refunding bonds, Keeny v. Kanawha County Court (W. Va.), 175 S. E. Rep. 60.

The holding of the West Virginia Court is highly persuasive in deciding the situation in Florida. Here the *rate* of taxation has not been limited by constitutional amendment as it was in West Virginia, but, nevertheless, the subject of the power to tax has been limited in a corresponding way by means of a constitutional amendment that with-

draws from taxation at any rate whatever all homesteads up to $5,000.00 in valuation for all purposes that the Constitution of the United States will permit to be thus withdrawn from the taxable resources of the State. So the proposition is essentially one in interpretation and construction of Section 7 of Article X in relation to amended Section 6 of Article IX of the Constitution.

What we have said in this opinion, however, is solely with reference to added Section 7 of Article X, considered as effecting a discharge of homesteads from continued *liability* to current and future debt service requirements prior to the time outstanding debts shall be ultimately discharged by payment in due course through the continued collection of pledged taxes upon taxable properties as defined by the Constitution at the time the debts were incurred.

If the Legislature duly provides sufficient revenues from other sources of taxation to actually take the place of the revenues that may be raised by continuing the existing *ad valorem* taxation on the homestead properties that are provided by added Section 7 of Article X to be specifically exempted from all taxation so far as is constitutionally possible under the limitations of the applicable Federal constitutional provision prohibiting the impairment of the obligation of contracts by the enactment of any state law or state constitutional amendment passed after the obligation was created, and payment of outstanding indebtedness be in fact realized from such other sources of taxation devised by the Legislature for the purpose of completely relieving homesteads from debt service taxes as well as other taxes, the bond obligation will become discharged and satisfied *pro tanto,* even though liability of the exempted property to continued taxation from the undischarged and unsatisfied portion of such statutory contract obligations will continue in force until the original statutory obligation of the

debt is fully satisfied by actual payment of the same, whether by the originally pledged revenues or otherwise as the Legislature shall provide as a substitute therefor.

Objection has been raised in this Court (although no objection on that score was presented in the Court below) to the effect that the City of Jacksonville had no authority, and could not have been constitutionally given any authority, to pledge its entire taxable property as security for the payment of its bonded debts. That the Legislature has so enacted in its special statutes relating to the City of Jacksonville cannot be denied.* But that the Legislature had the constitutional power to so enact is now pointedly challenged for the first time, and that despite the fact that the provisions referred to have been in the charter of the City of Jacksonville for half a century.

It has already been pointed out in this opinion that a bonded debt of a municipality is but the present funding, to the amount of the bonds, of the future taxes that have been authorized to be pledged for their redemption at maturity. City of Clearwater v. United Mutual Life Ins. Co., 108 Fla. 623, 147 Sou. Rep. 459. The annual tax expressly or impliedly made leviable to pay municipal bonds is the security offered to the creditors who take such bonds. The laws themselves under which such bonds are issued, therefore constitute a definite pledge on the part of the public corporation to continue the exercise of the pledged taxing power until the debt is paid. And the pledge of the annual tax can not afterward be severed from the bond contract without violating its stipulations, any more than a mortgage executed as security for a loan can be subsequently re-

---

*See Sections 381-439, Charter of City of Jacksonville (Bedell & Miller's 1927 Compilation and various session laws referred to and incorporated therein.

pudiated as forming no part of the original transaction. State of Louisiana v. Pilsbury, 105 U. S. 278, 26 L. Ed. 1090.

All the property within the limits of the territory of a city at the time bonds are issued and sold under a pledge of the taxing power against such taxable property, may be subjected to the payment of the debt represented by the bonds to the extent of the taxation liability implied in the pledge of the taxing power at the time the debt was created, as has been pointed out in the numerous cases heretofore cited in this opinion.

To spread a statutory lien upon taxable property to the extent of an authorized or required tax or assessment liability to which it may be subjected, as a means of better securing the enforcement of the tax or assessment when ascertained, assessed and declared to be due and payable in the future, is an acknowledged constitutional exercise of legislative power in this State, as shown by the following cases heretofore decided by this Court. Anderson v. City of Ocala, 83 Fla. 344, 91 Sou. Rep. 182; Lybass v. Fort Myers, 56 Fla. 817, 47 Sou. Rep. 346; Gailey v. Robertson, 98 Fla. 176, 123 Sou. Rep. 692; City of Sanford v. Dial, 104 Fla. 1, 142 Sou. Rep. 233; Sawyer v. Town of Mt. Dora, 108 Fla. 456, 146 Sou. Rep. 563, 148 Sou. Rep. 209; City of Tampa v. Lee, 112 Fla. 668, 151 Sou. Rep. 316; Poekel v. Dowling, 108 Fla. 582, 146 Sou. Rep. 662; Davant v. City of Brooksville, 107 Fla. 292, 144 Sou. Rep. 666; Gulf View Apartments v. City of Venice, 108 Fla. 41, 145 Sou. Rep. 842; Cochrane v. Town of Boca Raton, 112 Fla. 177, 150 Sou. Rep. 611; Ridgeway v. Peacock, 100 Fla. 1297, 131 Sou. Rep. 140; Ridgeway v. Reese, 100 Fla. 1304, 131 Sou. Rep. 136; Hackney v. McKenny (on rehearing), 113 Fla. 189, 151 Sou. Rep. 529. In the case last cited it was definitely held that under the laws of Florida "Whether

* * * property was duly assessed or not, it was subject to the statutory lien for all ad valorem taxes * * * lawfully collectable against the property," (151 Sou. Rep. text p. 530, column 1).

No reasoning is advanced, nor any authority whatsoever cited, to support the objection that it was beyond the constitutional power of the Legislature to authorize the municipality of Jacksonville not only to pledge its taxing powers to pay its debts as an incident to their creation, but to spread comitant thereto a lien on all the taxable property at that time situate within the municipality, as a means of security for the future enforcement of the tax to the extent that such taxable property had, under the law, become subject to any *ad valorem* taxes lawfully collectable against same to pay the municipal debt so incurred.

This is not to hold that the private property of individuals within the territorial limits of the City of Jacksonville can ever be reached by the municipality's creditors directly, as is the case in some of the New England States. On the contrary, it means nothing more than that the taxable property within the municipality of Jacksonville has been made subject to a tax liability for that city's debts, as of the date of the creation of any of said debts and thereafter remains subject to liability for municipal taxation for the payment of any such debts until they are paid—the levy and collection of the required taxes, however, to be made by the city in due course when and as, necessary to raise the required funds to discharge the debt to which the taxable property within the city has become liable under the terms of the city's specific pledge of its taxable resources as authorized by its charter.

So interpreted, the language in the charter and in the proposed refunding bonds to the effect that "for the payment of such bonds and the interest thereon, the entire tax-

able property of the city shall be thereby pledged" is within the statutory and constitutional powers of the City of Jacksonville to so incorporate in its contractual engagement represented by such bonds.

The foregoing opinion is concurred in by Mr. Justice WHITFIELD and Mr. Justice TERRELL. It is not concurred in by Mr. Justice ELLIS, Mr. Justice BROWN or Mr. Justice BUFORD. The views of the Justices last named will be found stated in their separate opinions filed herein.

The Court being equally divided in its opinion as to a part of the decree appealed from, but a majority of the Court having concurred in a general judgment of affirmance of the conclusion reached by the Circuit Court, said decree should be affirmed as entered, on the authority of State, *ex rel.* Hampton, v. McClung, 47 Fla. 224, 37 Sou. Rep. 51, and all of the assignments of error should be overruled for a like reason.

It is therefore considered, adjudged and decreed by this Court that the validation decree in manner and form as entered and appealed from, be and the same is hereby affirmed, and that mandate in conformity with this judgment do issue within ten days as provided for by Section 5108 C. G. L., *supra,* Chapter 11854, Acts of 1927, if no petition for rehearing has been filed within that period.

Affirmed.

WHITFIELD and TERRELL, J. J., concur.

BUFORD, J., concurs specially.

ELLIS, J., dissents.

BROWN, J., dissents in part.

WHITFIELD, J. C. (concurring).—The validating statute requires the petition in a cause to state the authority for incurring the bonded debt, the ordinances or resolutions authorizing their issuance and the fact of their adoption,

and all essential proceedings had or taken in connection therewith; and requires the due publication of notice addressed to the taxpayers and citizens of the taxing unit, requiring them to show cause, if any they have, why said bonds should not be validated and confirmed. By the publication of the notice, all taxpayers and citizens of such taxing unit shall be considered as parties defendant to said proceedings, and the court shall have jurisdiction of them the same as if they were named as defendants in said petition and personally served with process. Sec. 5107 (3297) C. G. L. The judge of the Circuit Court shall proceed to hear and detemine all questions of law and of fact in said cause. Any taxpayer or citizen may become a party to said proceedings and any party thereto who may be dissatisfied with the decree of the court, may appeal therefrom to the Supreme Court. Sec. 5108 (3298) C. G. L. If no appeal is taken or if the decree is affirmed on appeal, the statute makes a decree validating bonds of taxing units, "forever conclusive as to the validity of said bonds" as against the issuing taxing unit "and against all taxpayers and citizens thereof." Sec. 5109 (3299) C. G. L.; Chap. 15772, Sec. 30, Acts. 1931.

The purpose of making all taxpayers and citizens of the taxing unit parties to the proceedings and to have the proceedings for issuing the bonds alleged in the petition, and requiring the judge to determine all questions of law or fact in the cause, is to enable taxpayers and citizens severally if desired to contest the validity of the proposed bonds as they may affect the rights and immunities of such taxpayers and citizens; and that such rights and immunities may be determined before the bonds are issued, since a validating decree is under the statute forever conclusive against all taxpayers and citizens of the taxing unit. See Thompson v. Town of Frostproof, 89 Fla. 92, 103 So. 118; Wein-

berger v. Bd. Pub. Instr. 93 Fla. 470, 112 So. 253; and other cases cited in the main opinion.

By answer a defendant taxpayer avers that as to the "petition and each and every allegation thereof, this intervener denies that said petitioner is entitled to have validated the aforesaid bonds totaling Four Hundred and Forty-Five Thousand ($445,000.00) Dollars, or any part thereof, in said petition sought to be validated, upon the following grounds severally, to-wit:

"(a) That said bonds are not refunding bonds such as are permitted to be issued under Chapter 15772, Acts of the Legislature of the State of Florida, 1931, but are, upon the contrary, new or original bonds in that they attempt to pledge the revenues of the electric light plant of the City of Jacksonville, Florida, which revenues were not pledged in the bonds sought or attempted to be refunded and that the said alleged refunding bonds purport to enlarge upon the obligations of the original bonds by irrevocably pledging, as a means of their payment, additional sources of revenue as well as renewing and continuing the obligations of the bonds that are proposed to be refunded.

"(b) That the City of Jacksonville is attempting to issue said alleged refunding bonds as authorized extensions and continuations of the obligations represented by the bonds sought to be refunded by them, which original obligations are not extinguished by but are merged into the alleged refunding bonds with like force and effect as if the original bonds had remained unrefunded by the issuance of said alleged refunding bonds and that therefore the said alleged refunding bonds would be, constitute and continue as a lien upon all and singular the taxable property within the corporate limits of the City of Jacksonville in the same manner and form as the said original bonds sought to be refunded were liens thereon at the time of their issuance, and that the

City of Jacksonville intends to and now is assessing taxes against all and singular the real and personal property within its corporate limits to pay interest and provide a sinking fund for the alleged refunding bonds without reference to whether or not the said property upon which it is so assessing taxes is or is not a homestead, in total disregard of the provisions of Article X, Section 7, of the Constitution of the State of Florida, duly and legally adopted, which said section of the Constitution provides that homesteads up to the value of Five Thousand ($5,000.00) Dollars shall be exempt from all taxation."

The above averments relate to the validity of the bonds as they affect property rights of the defendant taxpayer and he has a right under the statute to an adjudication of "all questions of law and of fact in said cause," *presented by him;* particularly as the statute makes him a party defendant in the cause and provides that a decree validating the bonds shall be "forever conclusive against * * * all taxpayers and citizens" of the city.

It appears that the bonds to be refunded as well as the proposed refunding bonds sought here to be validated, contain the following: "Secured by Pledge of the Entire Taxable Property in the City of Jacksonville, Real and Personal."

All agree that the quoted provision of the bonds if interpreted as a specific pledge of the private properties within the city, is unauthorized by law. If such provision renders the refunding bonds illegal or invalid, it likewise renders the bonds sought to be refunded illegal or invalid.

But the rule is that the obligations of bonds of taxing units are such as are fixed by applicable law; and where resolutions for the issue of bonds or the bonds themselves contain provisions that are not covered by, or that are in excess of, the provisions of law controlling the subject, such

provisions are to be interpreted as being modified or re-strained by the controlling law. State, *ex rel*. Babson, v. City of Sebring, 115 Fla. 176, 155 So. 669. In this case the provisions in the resolutions or in the bonds to the effect that all the taxable property within the city is pledged to secure the payment of the bonds, must be held to mean only that such taxable property is subject to taxation for the payment of the bonds and the interest thereon as may be prescribed by law. The provisions in the resolutions or bonds that are broader than the law authorizes, did not render the original bonds invalid; but such provisions are restrained in their operation by the controlling law; and such is the effect as to the refunding bonds.

A majority of the members of the Court are of the opinion that the words "secured by pledge of the entire taxable property in the City of Jacksonville, real and personal," are limited and controlled by the provisions of the statutes under which the bonds were issued, which statutes confine the liability of taxable property to the due exercise of the taxing power as provided by law.

Chapter 6357, Acts of 1911, "An Act Affecting the Government of the City of Jacksonville" etc., in force when the bonds here sought to be refunded were originally issued, contain in Section 15, the following:

"The Mayor and City Council shall levy annually such special tax on the taxable property within the corporate limits of said city as may be necessary to pay the interest on said bonds and the sinking fund for the payment thereof provided by said ordinance under which the said bonds shall be issued."

This and other provisions of the Charter Acts of the City of Jacksonville limit and control the meaning and effect of the provisions contained in the bonds and in the reso-

lutions of the county commissioners upon which the bonds were issued.

Chapter 7659, Acts of 1917, "An Act Affecting the Government of the City of Jacksonville" etc., in force when the original bonds were issued, contains the following:

"Sec. 18. *Municipal Plants.*—No enlargement, extension or improvement of the waterworks, electric light plant, or municipal docks, shall be made, except reasonable repairs for the continuous operation, unless such expenditures shall be authorized in the budget or by ordinance making appropriation therefor; and all net revenues derived from each of the said departments, after paying the necessary cost of operation, shall be applied to the payment of interest on bonds and creating a sinking fund for the redemption thereof as provided by law and ordinances under which said bonds were issued; and if any surplus remains, the City Council may, on the request of the City Commission, authorize the expenditure of the whole or any part thereof in the enlargement, extension and improvement of said plants or for other municipal purposes."

The quoted section requires that all revenues derived from the city's *waterworks, electric light plant,* or *municipal docks,* after paying the necessary cost of operation, shall be applied to the payment of bonds of the city, the following words of the section, viz.: "as provided by law and ordinances under which said bonds were issued," having reference to provisions regulating the interest and sinking fund, and do not require the application of such net revenues to be provided for in other statutes or in resolutions under which bonds are issued.

Chapter 15255, Acts of 1931, does not repeal Section 18 of Chapter 7659, Acts of 1917, but continues the operation of such Section 18, Chapter 7659, and makes additions thereto which are effective at least prospectively, if the Act

of 1931 did not afford an additional revenue resource applicable to the bonds of the city then outstanding.

The merits of some of the "questions of law and of fact" presented by the defendant taxpayer as to the validity of the refunding bonds with reference to the taxpayer's rights, have been considered by the Court, and the defendant taxpayer has a right under the validating statute to an adjudication of "all questions of law and of fact" raised by him as a defendant in the cause which directly affect his property rights. Such defendant taxpayer asserts that the bonds sought to be validated do affect his rights as a taxpayer in the city claiming an exemption of his homestead from taxation to pay the bonds if issued. The statute makes a validating decree forever conclusive against him and he in effect here asserts that the bonds and the proceedings under which they are to be issued do make and are designed to make the defendant's homestead subject to taxation to pay the bonds.

The question of law presented by the defendant taxpayer, denying the right to have the refunding bonds validated because they are designed to subject his homestead to taxation when he claims it is exempt from taxation under added Section 7 of Article X of the Constitution, adopted in November, 1934, directly affects the property rights of the defendant taxpayer and is not merely collateral as were questions presented in Volusia County v. State, 98 Fla. 1166, 125 So. 375; West v. Town of Lake Placid, 97 Fla. 127, 120 So. 361; Craven v. Hartley, 95 Fla. 704, 117 So. 97.

When the bonds of counties, municipalities and districts in Florida were issued, the statutes required an annual tax levy upon all taxable property in the several taxing units respectively, sufficient to pay the interest on the bonds as it matured and to provide a sinking fund sufficient to pay the principal of the bonds as they matured. For statutory

obligations of the City of Jacksonville, Florida, bonds, see statutes referred to above and others cited in the main opinion. The Constitution then provided that *all* property, real and personal, shall be justly valued for taxation except such property as may be exempted by law for municipal, education, literary, scientific, religious or charitable purposes. Sec. 1, Art. IX. Thus the organic law of Florida itself determined what property may by law be exempted from taxation. The Constitution did not empower the Legislature to determine what classes of property shall be liable to taxation. Homesteads could not then be legally exempted from taxation except by an amendment to the Constitution, though statutes could exempt from taxation property held and used for municipal, education, literary, scientific, religious and charitable purposes. See Section I, Article IX, and Section I, Article X, Constitution.

The Constitution did not expressly empower the Legislature to authorize counties, municipalities or districts to issue bonds, but it did not expressly or impliedly forbid such issue; and amended Section 6 of Article IX, adopted in 1930, recognized the then existing statutory authority of counties, municipalities and districts to issue bonds for appropriate purposes; and required future bond issues authorized by statute to be approved by a stated vote of the electors of the respective taxing units; and expressly authorized refunding bonds to be issued without a vote of the electorate, to refund, not general obligations, but "the bonds or the interest thereon of such counties," etc. Thus amended Section 6 of Article IX, adopted in 1930, contemplated refunding bonds which do not create new obligations, but continue old obligations. Added Section 7 of Article X, adopted in 1934, does not purport to modify amended Section 6 of Article IX, but exempts homesteads from taxation insofar as it can be done without violating the para-

mount Federal Constitution forbidding any law impairing the obligation of contracts and forbidding the denial of the equal protection of the laws. See Gray v. Moss, 701 Fla. 115, 156 So. 262; 175 S. E. 60. Homesteads constitute a large percentage of the property values in perhaps every taxing unit of the State. Exemptions of property from taxation by amendments to the Constitution other than by added Section 7 to Article X, are not in controversy here.

DAVIS, C. J., and TERRELL, J., concur.

BUFORD, J. (concurring specially).—I concur in the conclusion reached in the opinion prepared by Mr. Chief Justice DAVIS that the proposed refunding bonds therein referred to will constitute the valid and binding obligation of the City of Jacksonville and that the terms and conditions of the bonds and the resolutions pursuant to which the same are to be issued constitute the same refunding bonds under the laws and Constitution of the State of Florida and that no election of freeholders is required under the Constitution to authorize the issuance of such refunding bonds. This conclusion can only be reached, however, by construing the words "pledge the entire taxable property in the City of Jacksonville to secure the payment of the bonds" to mean only a pledge of the taxing power of the city and not as a pledge of any real or personal property within the city except as the same may become effected by liens accruing in favor of the city for the amount of taxes lawfully levied.

I do not concur, however, in that part of the opinion which discusses and holds that the exemption provisions contained in Article X, Section 7, of the Constitution of Florida as adopted at the general election on November 6th, 1934, exempting from taxation homesteads up to the value of $5,000.00 will not be applicable to taxes levied to provide a sinking fund and to pay interest on such refunding bonds for the reasons that I think the determination of that ques-

tion is not involved in the statutory proceedings seeking to validate the bond issue. Whether or not taxes may lawfully be levied on that particular property to raise funds to create a sinking fund and to pay interest on these bonds could in no wise affect the validity of the bonds. The bonds purport to pledge the funds that may be derived from a tax levy on all the taxable property within the County of Duval and whether certain property in the county is taxable or not does not affect the validity of the bonds. Therefore, whatever may be said by this Court in an opinion on these proceedings in regard to whether or not the exemption will apply when taxes are levied to pay those bonds is obiter and without any force and effect to bind either a taxpayer or a bondholder and is a mere gratuitous expression of what members of the Court may conceive to be the law in that regard. If a taxpayer should be entitled to the benefits of the exemption insofar as the tax applies to the funds to be raised for the payment of these bonds he cannot be assumed to have waived such constitutional rights nor to be estopped from exercising his rights by whatever may have transpired in these proceedings if and when an unauthorized tax shall have been levied against his homestead property. If, on the other hand, the Court should now hold that the exemption applies to levies made for this purpose, a bondholder would not be estopped or assert his rights if and when a tax assessor should not include in the assessment roll taxes on the property claimed to be exempt for the reasons above stated and because the determination of that question has no place in this which is a statutory proceeding brought for the purpose of validating the bond issue and nothing more.

It may be, and I concede that it is true, that it is of paramount importance to the State of Florida to have this question judicially determined by the Supreme Court at the

earliest possible moment but that fact constitutes no justification for the Court to attempt to determine in this proceeding a question which is not before the Court in a case where that issue may be judicially determined and forever set at rest.

My view of the matter is that whether or not the exemption will apply either to taxes levied to procure funds with which to pay outstanding bonds or with which to pay refunding bonds issued after the adoption of the amendment is an open question which can only be determined in cases in which those issues are properly presented for judicial determination.

I do not think that the opinion and judgment of this Court in the case of Gray, Secretary of State, v. Moss, 115 Fla. 701, 156 Sou. 262, estops a taxpayer from contesting and having judicially determined the validity of a tax assessment which may be levied after the adoption of the amendment upon his homestead property coming within the purview of the amendment. When such case is presented and reached for determination it must be borne in mind that the Court will be required to deal with the constitutional provisions and not with a statute. It will be required to deal with the rights of the State and its people as a sovereignty and to determine sovereign rights as distinguished from individual or community rights and to determine how far the State may exercise its sovereign right to limit or expend its sources of revenue after having authorized taxing units to incur obligations which have been incurred and for the security of which such taxing units have pledged the taxing power of such units, which will necessarily bring the courts to a serious consideration of what was said by Mr. Justice SWAIN in the case of Gilman v. Sheboygan, 17 Law Ed. 305, as follows:

"The Act of 1854 authorized the borrowing of money, the issuing of bonds, and the levying of a tax upon all the property in the city, for the purposes specified. The imposition, modification and removal of taxes, and the exemption of property from such burdens, is an ordinary exercise of the power of State sovereignty. There is no pledge, express or implied, that this power should not thereafter be exercised."

Should apparent expediency ever become the guiding star by which the course of judicial opinion and enunciations are to be laid, the science of law will become a farce and the safest author of human rights will have been cast away.

Therefore courts should attempt to determine only those issues which come to them properly and legally presented and then only in accordance with the fixed principles of law. Fixed principles may be effectively applied to new facts and new conditions without doing violence to either.

ELLIS, J.—I concur in the views expressed by Mr. Justice BUFORD as above written.

ELLIS, J. (dissenting).—I agree with the opinion expressed by Mr. Justice BUFORD, in the concurring opinion prepared by him in this case, that the question whether the homestead of a citizen of Jacksonville within the limit of exemption, which under the provisions of Article X, Sec. 7 of the Constitution adopted at the general election on November 6, 1934, is exempt from taxation up to the value of $5,000.00, will be exempt from taxation for debt service on account of the proposed four hundred and forty-five thousand dollars of refunding bonds, which the city through and by its City Council has decided to issue, is not involved in this appeal which is from an order made by the Circuit Court for Duval County in a statutory proceeding for the validation of the proposed bond issue.

The proceeding for the validation of bonds which the municipality desires to issue is a special statutory proceeding prescribed by Sections 5106 to 5129 inclusive of the Compiled General Laws of Florida, 1927. The proceeding is begun by the county, municipality, taxing district, or other political district or subdivision by filing a petition against the "State of Florida in the circuit court of the county in which such election has been held or other proceedings have been had or taken."

The only allegations of the petition necessary to be set forth therein relate to the authority for incurring the debt; the fact that an election has been held and that such election was in favor of issuing the bonds if an election was required; the ordinances or resolutions authorizing the issuance, and the fact of their adoption and all essential proceedings taken in connection therewith; the amount of the bonds or certificates to be issued; what interest they are to bear and when and where the principal and interest are to be paid. Such are the only possible issues involved or subjects on which issues may be made in a bond validating proceeding under the statutes of this State.

The purpose of the statute was to obtain a sort of declaratory judgment of the court upon the validity of the proposed obligation, more accurately the validity of the proposed debt, that is to say, power to incur it and the validity of the terms of the proposed promise to pay which is to be issued as evidence of the debt. A judgment of validation obtained under such a statute and in such proceedings was deemed to facilitate the sale of the bonds as the purchasers thereof would consider such evidence of debt to be secure from further technical or formal objection to the power of the county or municipality to incur the debt and the terms of the promise to pay.

In such proceedings all taxpayers or citizens of the municipality, county or taxing district are considered as parties defendant. The judge of the Circuit Court is empowered to determine all questions of law and of fact in the cause.

Chapter 14504, Acts 1929, relates to proceedings for the validation of bonds proposed to be issued by drainage, conservation or reclamation districts.

The questions of law and fact to be determined in such proceedings are by stattuory provision required to be set forth in the petition for validation of the proposed bonds. The general rule in all proceedings under a special statutory enactment is that the proceedings prescribed by the statute shall be strictly followed and that rule obtains in this State. See 25 R. C. L. 1059; Jones v. Jones, 12 Pa. St. 350, 51 Am. Dec. 611, text 623; Election Cases, 65 Pa. St. 20, text 41.

Proceedings for the validation of bonds are special statutory proceedings. They are neither proceedings in chancery nor at law, but the appellate procedure takes the form of such proceeding in chancery in part.

The State Attorney for the Fourth Judicial Circuit answered for the State in this proceeding that the City of Jacksonville possessed the authority under the provisions of Chapter 15772, Laws of Florida, 1931, to issue the bonds described in the petition but neither admited nor denied the facts alleged in the petition.

On the same day Jesse Boatright, alleging himself to be a citizen and taxpayer of the City of Jacksonville, submitted a petition in the Circuit Court for Duval County to be permitted to intervene in the cause. Under the provisions of the statute a taxpayer and citizen of the city by the publication of the notice to show cause why the bonds should not be validated was thereby made a party defendant to the proceedings and the court had jurisdiction of him as if he

had been named in the petition and personally served with process.   Sec. 5107 C. G. L., 1927.

An order allowing him to intervene therefore would seem to have been superflous.   On the same day on which Boatright filed his petition he filed his answer, in which he averred that the proposed bonds were not refunding bonds such as were permitted to be issued under the Act, Chapter 15772, *supra,* in that they sought to pledge the revenues of the electric light plant of the City of Jacksonville which were not pledged in the bonds issued for the debt sought to be refunded.

He also tendered as a defense to the validation of the bonds the fact that the alleged refunding bonds provide for a continuation of the obligations of the bonds sought to be refunded which he avers are not extinguished by, but are merged into, the proposed refunding bonds with like force and effect as if the original bonds are still in existence, that the refunding bonds would therefore constitute a "lien upon all and singular the taxable property within the corporate limits of the City of Jacksonville in the same manner and form as the said original bonds sought to be refunded were liens thereon at the time of their issuance." It was averred that the City of Jacksonville is assessing taxes against all the real and personal property within the city to pay interest and sinking fund for the refunding bonds "without reference to whether or not the said property upon which it is so assessing taxes is or is not a homestead, in total disregard of the provisions of Article X, Section 7, of the Constitution."

That section provides that homesteads of citizens and residents of the State up to the value of five thousand dollars shall be exempt from all taxation.

Based upon those averments the defendant, Boatright, prayed that the petition to validate the bonds be dismissed.

On the same day a motion to strike the answer was filed and the same came on immediately to be heard. The motion to strike the answer of Boatright was granted and a long order prepared and entered validating the bonds. From that order Boatright appealed on the same day and filed his assignment of errors.

Certainly no time was lost in the preparation of this case from the day the State Attorney interposed the answer in behalf of the State. The celerity with which the cause was determined in the lower court may evidence the importance with which an early decision on the points presented was regarded by those having charge of the proceedings and the confident opinion of the court as to the lack of merit contained in the defense of Boatright.

I think the Judge of the Circuit Court was correct insofar as the order striking the answer applied to that portion of it setting up as a reason why the bonds should not be validated that the City of Jacksonville was proceeding to assess taxes upon the homestead of Boatright. That averment cannot by any process of reasoning be regarded as in the slightest degree relating to or having any material bearing whatsoever upon the power of the city to issue the refunding bonds and the regularity of the proceedings under which they are proposed to be issued.

The attempted defense has no place in such proceeding. It is obvious that the property which may be taxed to provide for the payment of interest on the proposed bonds and a sinking fund to pay the principal as it becomes due has no bearing whatsoever upon the authority of the municipality to issue the bonds and the proceedings followed by the City Council in the execution of the power. By the very provisions of the statute taxes may be levied upon all taxable property within the city for the debt service, but what property may be taxable is a question which has no relation to

the power to issue the bonds nor bearing upon the regularity of the process by which the power to issue the bonds is exercised.

The reason given by the Judge for the conclusion reached by him on the point is a matter with which an appellate court is not necessarily concerned nor do the reasons offered by him inject into the proceedings a justiciable question to be reviewed.

It is sufficient that the defense was stricken as having no bearing on the case. I agree with Mr. Justice BUFORD that what this Court may say as to the sufficiency of such a defense is "obiter and without any force and effect to bind either a taxpayer or a bondholder and is a mere gratuitous expression of what members of the Court may conceive to be the law in that regard."

I am of the opinion that the order dismissing the answer of the defendant Boatright insofar as it presented the defense that the proposed bonds are not refunding bonds is erroneous.

The proposed refunding bonds do in terms enlarge upon the obligation of the original bonds by attempting to pledge additional sources of revenue as well as to continue the obligation of the bonds that are proposed to be refunded as the answer in terms specifically avers and the form of the proposed bonds shows. That being true such bonds may not be issued without the approving vote of the freeholders of the city as contemplated by Section 6 of Article IX as amended of the Florida Constitution. See State v. Citrus County, 116 Fla. 676, 157 South. Rep. 4.

The above mentioned amendment to the Constitution of this State has been under consideration by this Court in many cases. It is held that the original indebtedness is not extinguished by the refunding bond, but is merged in the refunding bond. The original obligation represented by the

bonds has even been said by this Court in some of the cases cited in the majority opinion to be projected into the future by the refunding bonds, which it is said Section 6 of Article IX so recognizes. See State, *ex rel*. Pinellas County, v. Sholtz, 115 Fla. 561, 155 South. Rep. 736.

A reference to Senate Joint Resolution No. 26, Acts Legislature 1929, p. 784, will reveal that it contains no such language. The amendment merely provides that counties, districts and municipalities shall have power to issue bonds only after the same shall have been approved by a majority of the votes cast in an election in which a majority of the freeholders who are qualified electors residing in such counties, districts or municipalities shall participate to be held in the manner to be prescribed by law. The amendment by its terms was not applicable to refunding bonds issued exclusively for the purpose of refunding of the bonds or the interest thereof of such counties, districts or municipalities. There was no such express power to issue bonds vested in such taxing agencies by the Constitution prior to that amendment, which does not provide that the refunding bond projects into the future the obligation of the bond refunded. The point, however, is beside the question in this case.

The authority under which in 1926 and 1931 the City of Jacksonville issued its Incinerator and Water Works Improvement Bonds and the refunding bonds of 1931 consisted of certain acts of the Legislature. Resting upon the authority of those Acts, ordinances were adopted providing that the city should levy annually such special tax on the taxable property within the corporate limits of said city as may be necessary to pay the interest on said bonds and provide a sinking fund each and every year for the payment of the bonds.

Chapter 15772, Acts 1931, *supra,* provided that the resolution authorizing the refunding bonds may pledge to the payment of principal and interest of such refunding bonds or to a sinking fund for the bonds a fixed proportion or a proportion to be determined from time to time as provided in the resolution of the moneys from time to time collected either by taxation of any kind whether upon real or personal property or collected from other revenues or receipts of the unit.

But the resolution under which these proposed refunding bonds are intended to be issued pledges all net revenues from the electric light plant of the city, and the "entire taxable property of said City of Jacksonville is also and shall stand irrevocably pledged by this resolution" for the "payment of each and every, all and singular the said bonds both principal and interest."

Here not only additional sources of revenue are pledged but it is sought to pledge the "taxable property of said city" which never was made or attempted to be made by legislation or ordinance security for the payment of such obligations.

The use of such language may have been an error. The choice of words was not accurate, but that error cannot be corrected by the court by substituting other and more accurate words to denote the pledge of the city's revenue collecting capacity.

BUFORD, J.—I concur herein insofar as views here expressed are in harmony with my special concurring opinion.

BROWN, J. (dissenting in part).—Both the old bonds sought to be refunded and the proposed refunding bonds, or the resolution or ordinance authorizing their issue, pledge the "entire taxable property in the City of Jacksonville" as security for the payment of the bonds. The city had no power to make such a pledge. The legislature could not

constitutionally authorize the city to make such a pledge. The city can pledge its taxing powers, and perhaps its own property not held for public purposes from which it cannot be diverted, but it cannot pledge the private property of its citizens, although such private property constitutes property which is subject to taxation. Such taxable property in the city, which does not belong to the city, but which belongs to individuals, firms and corporations, can only be pledged or mortgaged by its owners. The city can pledge its power to tax, and in the exercise of such power, if lawful taxes are not paid, it can as an incident to the enforcement of that power, acquire liens, and even the property itself at tax sales if the taxes remain unpaid, but the bondholder cannot exercise these powers, except in one respect, that is, he may buy at a tax sale if he becomes the highest bidder and pays his bid in cash, just as any other person can. So this clause in the refunding bonds is not legally authorized. This is so plain that no citation of authority is necessary.

It might be contended that by putting in this clause, the city intended to pledge its taxing power. But it did that by another clause—the clause by which the city bound itself to levy a tax each year sufficient to pay the interest and principal of the bonds as the same become due. There is also a clause pledging the full faith and credit of the city. These clauses amount to a pledge of the city's power to tax, which is the real essential security behind the bonds. And the bondholder can compel the city to exercise such power.

There is another feature of most of these bonds which is not allowable under Section 6 of Art. IX of the Constitution in refunding bonds issued without a vote of the people. I refer to the pledge of the net revenues of the city's electric light plant. This pledge was not contained in the old bonds, except as to one of the old issues, which contained a pledge in the authorizing ordinance of somewhat similar import.

It is contended that this pledge of the net revenues of the electric light plant does not amount to the creation of any additional liability, nor impose any enlargement of the ob-. ligation of the original bond, so as to come in conflict with the previous decisions of this Court, including the recent case of State v. Citrus County, 157 So. 4, because the city charter put the same pledge behind the old bonds. It is true that the city charter Act of 1917 and the amendment thereto in 1931 (See Chapters 7659 and 15255 of Laws of Florida) did provide that all net revenues of the electric light plant and certain other city-owned utilities "shall be applied to the payment of interest on bonds and creating a sinking fund for the redemption thereof, *as provided by law and ordinances under which said bonds were issued.*" But as I read this. record there was only one of these original issues of bonds to which this section applied, for in only one of the authorizing ordinances does it appear that the net revenues of the electric plant were attempted to be pledged. Therefore most of these bonds enlarge the obligation of the old bonds by pledging new and additional revenues, and are not strictly speaking such refunding bonds as can be issued without the approving vote of the freeholders as provided in Section 6 of Article IX of the Constitution.

. It appears that the Improvement Bonds of 1921, heretofore refunded under ordinance No. U-133, did provide that upon default for ninety days, the city commission should take possession of the electric plant and other revenue-producing property of the city and operate the same and apply the net proceeds to the payment of the principal and interest of such bonds. Thus it appears that only $120,000.00 of the bonds here sought to be refunded were secured in their inception by the net revenues of the electric plant.

. If the illegal clause, attempting to pledge all the taxable property in the City of Jacksonville, can be stricken by

amendment of the authorizing ordinance, or can be regarded as stricken on the ground that it is nugatory and of no effect one way or the other, and if the city amends the ordinance so far as to eliminate the pledge of the net revenues of the electric plant, then I think the proposed refunding bonds could properly be again submitted to the court for validation; but the present decree of validation should, in my opinion, be reversed.

In the present state of this record, I do not see how this Court can adjudicate the question as to whether homestead property can be taxed for the payment of the proposed refunding bonds. The contention that we should adjudicate that question is predicated by appellant upon the fact that both the old and the proposed refunding bonds pledged all the taxable property in Jacksonville, and hence by its terms covered homesteads as well as all other property. For the reasons above pointed out, I regard such pledge as being illegal and void, *in toto,* and hence we are not called upon to determine its possible operative effect for any purpose. See also in this connection State v. City of Miami, 157 So. 13.

I think this case should be reversed with leave to the lower court to permit the city authorities, if they see fit to do so, to make necessary amendments to their authorizing ordinance and the form of bonds therein provided, so as to make the proposed bonds refunding within the meaning of the Constitution as previously construed by this Court, and then to resubmit the case, with leave to the present intervener or any other citizen to interpose any objection permitted by the statute, and then to render such decree as the law and the facts warrant.