STATE OF FLORIDA, *Appellant*, vs. SPECIAL TAX SCHOOL DISTRICT No. 5 OF DADE COUNTY, *Appellee*.

144 So. 356.

En Banc.

Opinion filed October 21, 1932.

*Vernon Hawthorne*, State Attorney, and *Henry M. Jones*, Assistant, for Appellant;

*Shipp, Evans & Kline* and *Masslich & Mitchell* (N. Y.) for Appellee.

BROWN, J.—This is an appeal from a decree of the Circuit Court of the Eleventh Judicial Circuit of Florida, in and for the County of Dade, validating an issue of $158,000. Refunding Bonds of Special Tax School District No. 5 of Dade County, which the Board of Public Instruction for said County proposes to issue without an election under the General Refunding Act of 1931, being Chapter 15772 of the Laws of Florida.

The following facts appear from the Board's resolution authorizing the proposed Refunding Bonds, a copy of

which resolution is attached to the petition for validation as Exhibit A.

The bonds to be refunded constitute portions of two issues of outstanding bonds which were favorably voted at an election and which mature as required by Section 17 of Art. XII of the Constitution as amended in 1924. The bonds of the first issue were issued under date of June 1, 1926, in the aggregate amount of $635,000. consisting of 635 bonds of $1000.00 each, numbered 1 to 635, inclusive, and maturing annually, June 1, in numerical order, lowest numbers first, $22,000. in each of the years 1929 to 1937 and $23,000. in each of the years 1938 to 1956, all inclusive. The bonds of the second issue were issued under date of December 1, 1926, in the aggregate amount of $100,000. consisitng of 100 bonds of $1000.00 each, numbered 1 to 100,. inclusive, and maturing annually, December 1, in numerical order, lowest numbers first $3000. in each of the years 1929 to 1940 and $4000. in each of the years 1941 to 1956, all inclusive.

All of the bonds of the first issue are now outstanding, except $36,000. of bonds which have been paid, being the $22,000 of bonds, numbered 1 to 22, inclusive, which matured June 1, 1929, and $14,000. in bonds, numbered 23 to 36, inclusive, which matured June 1, 1930. All of the bonds of the second issue are now outstanding except $6,000. thereof which have been paid, being the $3000.00 bonds, numbered 1 to 3, inclusive, which matured December 1, 1929, and the $3000.00 bonds, numbered 4 to 6, inclusive, which matured December 1, 1930.

The $158,000. Refunding Bonds authorized by said resolution to be issued without an election consist of 158 bonds of $1000.00 each, numbered 1 to 158, inclusive, are dated June 1, 1932, and mature annually, June 1, in numerical order, lowest numbers first $5000. 1935 to 1937,

inclusive, $10,000. 1938, $10,000. 1939, $15,000. 1940 to 1946, inclusive, and $18,000. 1947.

The result of the proposed refunding will be that no bonded debt evidenced by the issue dated June 1, 1926, will mature in any of the years 1932 to 1934, inclusive; and only $5000.—an amount less than 3% of the issue— will mature in each of the years 1935 and 1936, and no bonded debt evidenced by the issue dated December 1, 1926, will mature in any of the years 1932 to 1936, inclusive.

The form of the Refunding Bonds as fixed by the authorizing resolution (Tr. 20) contains the following recital, which is a covenant, as to the provision made for sufficient taxes:

"Provision has been made for the levy and collection of a direct annual tax upon all taxable property within said District sufficient to pay the principal and interest of this bond as the same shall fall due."

Section 6 of the same resolution (Tr. 21) provides for the levy of such taxes.

The bonds appear to be authorized by the General Refunding Act of 1931, above referred to.

Section 17 of Article XII of the Constitution, as amended in 1924, reads as follows:

Section 17. The Legislature may provide for special tax school districts to issue bonds for the exclusive use of public free schools within any such special tax school district, whenever a majority of the qualified electors thereof who are freeholders shall vote in favor of the issuance of such bonds, but no bonds shall be issued hereunder which shall exceed, together with the existing indebtedness of such special tax school district, 20 per cent. of the assessed value of the taxable property of such district according to the last assessment for State and County purposes prior to the issuing of such bonds. Any bonds issued hereunder shall become payable within thirty years from the date of issuance in annual installments which shall

commence not more than three years after the date of issue. Each annual installment shall be not less than three per cent. of the total amount of the issue. Whenever any such special tax school district has voted in favor of the issuance of such bonds a special tax for the payment of the interest on said bonds and the principal thereof as the same shall become due and payable, shall be levied on the taxable property within the district voting for their issuance in accordance with law, providing for the levy of taxes and such tax shall not be applied to any purpose other than the payment of the principal and interest of said bonds.''

Section 6 of Article IX of the Constitution, as amended in A. D. 1930, provides:

Section 6. The Legislature shall have power to provide for issuing State Bonds only for the purpose of repelling invasion or suppressing insurrection, and the Counties, Districts or Municipalities of the State of Florida shall have power to issue bonds only after the same shall have been approved by a majority of the votes cast in an election in which a majority of the freeholders who are qualified electors residing in such Counties, Districts, or Municipalities shall participate, to be held in the manner to be prescribed by law; but the provisions of this Act shall not apply to the refunding of bonds issued exclusively for the purpose of refunding of the bonds or the interest thereon of such Counties, Districts, or Municipalities.''

Appellant's first contention is that an election is required for the issuance of refunding bonds, as well as for the issuance of other bonds of special tax school districts; that the only effect of the 1930 amendment is to require that, at an election on an original issue of bonds, a majority of those who are qualified to vote on the question of issuing bonds shall participate.

In support of this contention, appellant cites the opinion in the case of Davis v. Dixon, 98 Fla. 87, 123 So. 536, decided June 25, 1929, more than a year before the amendment of 1930 was adopted. We do not ques-

tion the soundness of the opinion rendered in that case as applied to the constitutional and statutory provisions then existing. The opinion written by Mr. Justice STRUM was concurred in by all the members of this court. It was therein stated that:

"There was an obvious purpose in the adoption of our 1924 amendment. The purpose was not only to prevent the creation or increase of bonded indebtedness by Special Tax School Districts, unless a majority of the freeholders should approve thereof, but also to require that such indebtedness, when contracted, should be discharged within fixed periods and according to a prescribed ratio of serial payments. To that end, the amendment of 1924 provided that the bonds which evidence such indebtedness should become payable serially in the ratio therein prescribed, so that such indebtedness should be paid within the time fixed."

In the course of the opinion, the following observation, to which appellant has called our attention, was made:

"It may be, and probably is the case, although it is unnecessary to now decide the point, that if it is found impossible to pay the original bonds at maturity, new bonds might be issued with which to discharge the original indebtedness by pursuing, *ab initio,* the entire procedure provided for the original issuance of such bonds, including a submission of the matter to the electorate."

And that is the course which was followed in authorizing the special tax school district refunding bonds involved in Juvenal v. Dixon, 99 Fla. 936, 128 So. 27.

Both of these cases preceded the adoption by the people of the above quoted amendment to section 6 of Article IX in November, 1930. The object and purpose of this amendment, the conditions which brought it about, and the evils sought to be remedied thereby, were discussed in the case of Sullivan v. City of Tampa, 101 Fla. 298, 134 So. 211. It was held in that case that:

"The constitutional amendment referred to unquestionably authorizes the issuance of refunding bonds without a vote of the people, when issued exclusively for the purpose of refunding the bonds or the interest thereon of counties, districts or municipalities." This applies of course to school districts as well as other special taxing districts. The appellant admits that the first part of this amendment, requiring that an election must be held for the authorization of an original issue of bonds, in which a majority of those who are qualified to vote on the question must participate, applies to school districts as well as other districts, but denies the applicability to school districts of the last part of the section, regarding refunding bonds. To this argument, we cannot agree. This contention is based upon the words: "the provisions of this act," that is, of this constitutional amendment, "shall not apply" to refunding bonds, thus, it is claimed, leaving refunding bonds of school districts subject to the election requirements of section 17 of Article XII. But this latter section, adopted in 1924, does not expressly purport to deal with refunding bonds, (see Davis v. Dixon, supra) and when, six years after its sions of this act," that is, of this constitutional amendment of 1930, expressly prohibiting the counties, districts and municipalities of this State from issuing bonds, excepting only in those cases where the same shall first have been approved by a majority of the votes cast in an election "in which a majority of the freeholders who are qualified electors residing in such counties, districts or municipalities, shall participate," thus establishing a new and different rule from that required by section 17 of Article XII as amended in 1924, and one that was expressly made applicable to every county, district and municipality in the State, including school districts, it became the exclusive rule on that sub-

ject|; and when it went further and said that the provisions of this new amendment should not apply to the refunding of bonds or the interest thereon of such counties, districts or municipalities, the obvious intention and effect of this provision was to authorize the issuance of refunding bonds without an election, when "issued exclusively for the purpose of refunding the bonds or the interest thereon of counties, districts or municipalities," including school districts. Being the last constitutional expression of the people's will, it must prevail over all previous expressions inconsistent therewith. This court has several times held that the 1930 amendment does not require a vote of the freeholders as a condition precedent to the issuance of refunding bonds designed to extend the time for payment of the original indebtedness, no new debt having been created. See State v. City of Miami, 137 So. 261, 103 Fla. 54, and cases cited. Thus it follows that even if section 17 of Article XII as amended in 1924 is held to either expressly or impliedly require the holding of an election as a condition precedent to the issuance of refunding bonds by a school district, this requirement, being inconsistent therewith, would be and is set aside by the 1930 amendment.

It is a matter of common knowledge that following the 1924 amendment many millions of dollars of special tax school district bonds were issued thereunder. As it was required by the amendment of 1924 that all such bonds should mature in annual installments, commencing not more than three years from date of issuance, many of these bonds had begun to mature when the 1930 amendment was adopted. Can it be reasonably said that it was the intention of the people in adopting the 1930 amendment, to except special tax school districts alone from the privilege of issuing refunding bonds without an election, and thus to hamper the refunding powers of such

districts? The situation with reference to the debt burdens and the danger of defaults was much the same in the case of special tax school districts as in the case of counties, municipalities and other districts and their need for refunding was equally as great. As was said in the case of Sullivan v. City of Tampa, the intent of the 1930 amendment was to prevent further abuse of the power to issue new and additional obligations, while at the same time facilitating the refunding of existing obligations already outstanding. For these reasons we adhere to the conclusion reached in the case cited that this constitutional amendment of 1930 "unquestionably authorizes the issuance of refunding bonds by counties, municipalities and districts, without requiring an election as a condition precedent thereto, when such refunding is for the purpose specified in the amendment;" and we here hold that this conclusion applies to school districts, the word "districts," as used in the constitutional amendment being broad enough to include school districts as well as other special tax districts, there being nothing in the language of the amendment to indicate in the slightest degree that school districts were to be excepted from any of the restrictions nor denied any of the benefits of the amended constitutional provision.

We come now to the second, and most difficult, question presented by this appeal. This question, briefly stated is:

May the installments of principal of school district bonds, issued, under section 17 of Article XII of the constitution, as amended in 1924, be refunded, without an election, regardless of the effect of such refunding upon the maturities of the outstanding bonded debt evidenced by the bonds, portions of which are to be refunded?

It must be admitted that under said 1924 amendment, as construed in Davis v. Dixon, and Juvenal v. Dixon,

supra, and before the adoption of the 1930 amendment, this question would have had to be answered in the negative. Witness the following quotation from the opinion in Davis v. Dixon:

"It may be, and probably is the case, although it is unnecessary to now decide the point, that if it is found impossible to pay the original bonds at maturity, new bonds might be issued with which to discharge the original indebtedness by pursuing *ab initio*, the entire procedure provided for the original issuance of such bonds, including a submission of the matter to the electorate. Such new bonds might serve substantially the same purpose as refunding bonds, but in its essential nature the indebtedness thereby evidenced would necessarily be a new indebtedness, because the postulate of the general rule as to the issuance of refunding bonds without a new election is that such refunding bonds merely evidence an extension or renewal in a new form of the original existing indebtedness, and our Constitution itself forbids such a continuation of indebtedness of this nature by limiting the time within which the bonds by which it is evidenced shall become payable.

"The insuperable command of the Constitution is that these bonds 'Shall become payable within thirty years from the date of issuance in annual installments which shall commence not more than three years after the date if issuance. Each annual installment shall be not less than three per cent. of the total amount of the issue.' That plan of maturity is therefore mandatory and exclusive. * * *

"The date of issuance of the existing bonds was October 1, 1926. It is proposed by issuing refunding bonds to defer payment of the interest accruing on the original bonds during the period from April 1, 1928, to October 1, 1928, aggregating $15,000. so that payment of the same will not commence until October 1, 1931, the date of the maturity of the first proposed refunding bonds, which is five years after the date of original issue. It would have been a clear violation of the Constitution to have made the interest mature in

that manner originally. To permit that result to be accomplished by issuing the proposed refunding bonds would clearly defer payment of the interest in question so that payment thereof would commence beyond the time limited by the Constitution, and would enable the obligor district to accomplish by indirection what the Constitution commands that it shall not do directly.''

In the Juvenal v. Dixon case, it appears that the new bonds were issued pursuant to the 1924 amendment as construed in the case of Davis v. Dixon, and this court in the Juvenal case, in an opinion by MR. JUSTICE BUFORD, upheld them. Among other things, it was said in the opinion in the latter case that it did not appear from the record that the portion of the original bond issue, provision for the payment of which was sought to be effectuated by the new issue there under review, ''could not have been lawfully spread out over a like period and with like maturities of interest and principal as will be accomplished by this proposed issue, and therefore the bill failed to show that the district would be enabled to accomplish by indirection in pursuing this course what the constitution commands it shall not do directly.''

It thus appears that section 17 of Article XII, as amended in 1924, made no express provision for refunding bonds, and that under said 1924 amendment the possibilities for refunding by issuing new bonds with which to discharge the original indebtedness created under that amendment were so very meagre and limited as to be entirely inadequate for all practical purposes to meet the emergency which faced the people of this State when the 1930 amendment was adopted.

In the opinion of MR. CHIEF JUSTICE WHITFIELD, in Board of Public Instruction of Polk County v. County Commissioners, 58 Fla. 391, 50 So. 574, it was said that,

"In construing an amendment to the State Constitution it is proper to consider the circumstances which led to the adoption of the amendment, and the purpose designed to be accomplished." In that opinion it was also pertinently observed that:

"An amendment of a constitution repeals or changes some provisions in, or adds something to, the instrument amended. Where an amendment is the last expression of the will and intent of the law making power duly exercised, such amendment is controlling and prior provisions inconsistent with or repugnant to the amendment are modified or superseded to the extent of the inconsistency or repugnancy. While implied repeals or amendments of constitutions or law's are not favored, yet the primary consideration is to give effect to the intent of the lawmaking power as duly expressed, and this should be done even if it results in a repeal or modification of older inconsistent or repugnant provisions. Where an amendment contains no express repeal or modification of existing provisions of law the old and the new provisions should stand and operate together if it can be done without contravening the intent of the lawmaking power as duly and fairly expressed in the later provision; but to the extent that a fair construction or interpretation of the new provision discloses inconsistency with, or repugnancy to an older provision, the later provision controls to effectuate the lawmaking intent."

What were "the circumstances which led to the adoption of the amendment" of 1930, and what was "the purpose desired to be accomplished"? On account of the great importance attaching to the decision in this case, we think it might be well to repeat here what was said on this subject in Sullivan v. City of Tampa, *supra*:

"It is a matter of common knowledge in this State that prior to the adoption of the amendment, and especially during the boom period during the years 1924 to 1926, the counties, districts, and municipalities of the State had issued bonds, notes and other obligations in-

volving hundreds of millions of dollars; that the issuance of a large part of these obligations had been authorized without a vote of the people, or in many cases, when a vote had been had, a very small portion of the voters had actually participated in the election. After the collapse of the boom and the return to a more sane condition of the public mind, there arose a strong sentiment among our people that no further bonded indebtedness should be issued or incurred without first securing the approval of a majority of the votes of the people upon whom the burden would fall. But the existence of a large amount of outstanding obligations, many of which had matured, or were about to mature, rendered it necessary that some provision should be made which would authorize the refunding of these existing and maturing obligations without the expense and delay of a preliminary election, otherwise immediate defaults would in many cases have occurred before the machinery for holding an election could have been put in motion and its function completed. Such conditions must have been in the minds of the framers in proposing, and of the people in adopting, such amendment. May it not be said that the intent of the people was to prevent further abuse of the power to issue new and additional obligations, while at the same time facilitating the refunding of existing obligations already outstanding? Such obligations were not to be repudiated; they had to be paid or refunded. While the main evil sought to be prevented or remedied by the amendment was the further increase of the bonded indebtedness of the several counties, municipalities and districts of the State except upon the authority of the people expressed in an election, it was also necessary that provision be made for authorizing the refunding of existing obligations, and even 'the interest thereon.' There was certainly no intent that this power of refunding should be impaired or unduly burdened.''

And further on in the opinion just quoted from the following appears:

''It will be noticed that the only limitation upon

the power of counties, districts, and municipalities to issue refunding bonds which is contained in the constitutional amendment (of 1930) is, that such bonds be issued exclusively for the purpose of refunding the bonds or the interest thereon of such counties, districts or municipalities. The constitutional provision contains no express language which purports to fix or limit the rate of interest which the refunding bonds shall bear, or to fix the price at which they may be sold. Being wholly silent as to such matters, and no such limitations being clearly implied from the use of the terms in the amendment itself, none will be implied by the court.''

In substance the 1930 amendment to section 6 of Article IX of the constitution said to the counties, municipalities and districts of this State, you ''shall have power to issue bonds,'' but this power is granted upon the strict condition precedent that you can issue them only after the same shall have been approved'' (not only by a majority of those qualified to vote who actually vote in an election, as has been heretofore customary, but) ''by a majority of the votes cast in an election *in which a majority of the freeholders who are qualified electors residing in such counties, districts and municipalities, shall participate,''* provided, however, that this election restriction on the ''power to issue bonds'' in general shall not apply to the issuance of a certain class of bonds known as *refunding* bonds, when such bonds are ''issued exclusively for the purpose of refunding the bonds or the interest thereon of such counties, districts, or municipalities.'' Thus, as we have heretofore held, this 1930 amendment, by fair and necessary implication, grants to counties, municipalities and districts the power to issue refunding bonds for the purpose prescribed in the amendment without the necessity of an election. As far as it goes, this amendment, unlike the 1924 amendment, appears in this respect to be self-excuting. See

Johnson v. Middleton, 47 S. W. (2nd) 1030, and Welch
v. Nicholasville, 225 Ky. 312, 8 S. W. 2nd, 400. It may
be that the exercise of the power thus granted may be
regulated and controlled by appropriate legislative ac-
tion, but it cannot be entirely denied by the legislature,
nor so unduly hampered or restricted as to defeat the
intent of the constitutional provision. This we think is
the fair construction of this constitutional amendment,
when interpreted in the light of the circumstances which
led to its adoption, as well as in the light of the language
used in the amendment as a whole.

We think therefore that the contention of appellant
that refunding bonds of special tax school district can-
not be issued without a new election unless the original
debt as modified by such refunding proceedings will
continue to mature within the period and according to
the ratio of serial payments prescribed for the original
bonds by section 17 of Article XII as amended in 1924,
cannot be upheld as to refunding bonds issued after the
adoption of the 1930 amendment, and in accordance with
the provision of the refunding act, Chapter 15772 of the
Laws of 1931. Such contention amounts, in effect, to a
denial to special tax school districts of practically all the
benefits of the 1930 amendment. If the State Attor-
ney's contention in behalf of the appellant is sound, as
we understand this record, not a single dollar of the
original $100,000 issue involved in this case can be re-
funded before 1941, and only $2,950 of any annual install-
ment of the original $635,000 issue can be refunded be-
fore 1938. Surely it was not the intention of the people
of this State in adopting the 1930 amendment to so deny
or restrict the refunding powers of special tax school dis-
tricts. But surely the power of refunding would be im-
paired and unduly burdened in the case of special tax
school districts if the power is to be restricted to refund-

ing only that small margin of the annual maturity by which the amount thereof exceeds 3% of the total amount of the original issue, or if the power is to be denied entirely in cases where the annual maturity is exactly 3% of the total issue, as is the case in one of the original issues involved in this proceeding, from the years 1929 to 1940. To uphold these contentions of appellant would be to add to the language of the 1930 amendment a condition or limitation not therein expressed, nor necessarily implied by the language used. The 1930 amendment is not only silent as to the interest rate of refunding bonds and the price at which they may be sold, as was pointed out in the case of Sullivan vs. Tampa, but is also silent as to their maturities. It was surely not intended, in adopting the 1930 amendment, that the limitation of the 1924 amendment upon the maturities of an original issue of bonds should, upon refunding, accompany the debt until paid in full, and thus in effect practically deny the power to refund any of such bonds. "If," as was well said in the brief filed in behalf of appellee in this case, "the maturities of refunding bonds must be fixed according to maturities required/ for original issues, then the last maturities of the refunding bonds must not exceed thirty years from the date of the original issue. The fallacy of such a contention is apparent when it is applied to a refunding of the bonds of the last maturity of an original issue—bonds which themselves in many cases, and in the pending case, mature exactly thirty years from the date of the original issue."

It seems plain, therefore, that none of the maturity specifications or limitations of the 1924 amendment can be held applicable to the refunding authorized by the 1930 amendment without crippling unduly the new power, and that it was the intent of the latter amendment to allow the legislature to prescribe, if it thought

it wise so to do, such reasonable limits upon maturities of refunding bonds as might at the time be adaptable to the conditions and necessities of the "counties, districts or municipalities" of this State, including of course school districts, as above indicated.

The third and last contention made in behalf of appellant is that, even if this court should hold that the maturities of special tax school bonds may be extended by the issuance of refunding bonds without an election, no tax can be levied to pay interest during the extended period. It is also contended that no tax can be levied for either the principal or the interest of refunding bonds unless authorized by an election.

This argument must fall if the power to issue bonds carries with it the power to levy sufficient taxes for their payment, unless such power is denied. For the reasons hereinabove given, we hold that the power to issue the refunding bonds involved in this case existed by virtue of the 1930 amendment of section 6 of Article IX of the Constitution, as well as by virtue of the authority of the general refunding Act of 1931, Chapter 15772, which was of course adopted after the constitutional amendment of 1930.

In State v. Bass, 96 Fla. 478, 118 So. 212, it was held that the action of the legislature in authorizing a special road and bridge district to issue one million dollars of bonds carried with it authority to levy a tax sufficient to provide for the interest and for a sinking fund for such one million of bonds. The opinion of MR. JUSTICE BUFORD in that case cites the case of State v. Ft. Pierce Inlet District, 94 Fla. 1157, 115 So. 547. If the granting by the legislature of the power to issue bonds in a certain amount carried with it the power to levy sufficient taxes for their payment, certainly when the constitution grants the power to issue refunding

bonds, it necessarily carries with it a like power, where, as in this case, there is nothing in the language of the constitutional provision to indicate that such power is withheld or denied.

As was said by this court in the Sullivan Case, relating to this constitutional amendment, "there was certainly no intent that this power of refunding should be impaired or unduly burdened." To authorize the issuance of refunding bonds without power to levy a tax for the payment of interest; and principal of such bonds, would be an empty power.

Furthermore, the power to levy a sufficient tax for the principal and interest of all refunding bonds is not only granted but is mandatorily required by section 22 of the general refunding Act of 1931 under which the bonds in question 'are authorized.

Certain other questions are discussed in the able and helpful briefs which have been filed by counsel for both appellant and appellee in this case, the decision of which is not required by the record in this case. After a careful consideration of both the record and the briefs, we are satisfied that the decree of the Circuit Court rendered June 16, 1932, validating the issue of refunding bonds involved in this case, was free from error, and should be affirmed.

Affirmed.

BUFORD, C.J., AND WHITFIELD, TERRELL AND DAVIS, J.J., concur.