THE CITY OF MIAMI, *et al.,* v. STATE, *et al.*

190 So. 774
En Banc
Opinion Filed July 28, 1939

600.

602

*Lewis Twyman* and *J. W. Watson, Jr.,* for Appellant City of Miami, and *Casey, Walton & Spain,* for Appellants Hornblower & Weeks, *et al.;*

*Mitchell D. Price & Charles W. Zaring* and *Jack R. Kirchik,* for Appellees.

WHITFIELD, J.—The appeal herein is from an order of the circuit court denying and dismissing a petition by the City of Miami, Florida, to have validated by the court proposed issues aggregating $28,808,000.00 of municipal refunding bonds, under Chapter 15772, a general Act of 1931. The validation proceedings were brought under Chapter 12003, Acts of 1927, as amended by Chapter 14504, Acts of 1929, Sections 5106 (3296), *et seq.,* C. G. L. The refunding bonds are designed to be issued under the last portion of Section 6, Article IX of the Florida Constitution, as amended in 1930.

The petition filed by the City under the statute alleged the adoption of, and exhibited copies of, four resolutions of the city commission to authorize, under Chapter 15772, General Laws of 1931, the issuance of the proposed refunding bonds sought to be judicially validated. Notice by order was served on the State Attorney and notice to the taxpayers and citizens of the city was published under the statute.

Five taxpayers intervened and filed an answer, and incorporated therein a motion to dismiss the petition, which motion was denied. The State Attorney filed an answer and adopted that of the intervenor taxpayers. Motions by the City to strike portions of the answer of the State Attorneys were denied; and motions to strike portions of the answer of the taxpayers were granted in part. Other parties referred to as Refunding Syndicate Members, alleged to be employed by the City in the refunding operations, were allowed to intervene.

Testimony was taken and the order made by the court is as follows:

"This is a petition by the City of Miami praying for a decree validating $28,808,000.00 of refunding bonds which the city, by the adoption of four resolutions numbered 14358, 14359, 14360 and 14361, authorized to be issued. Certified copies of the resolutions, as well as excerpts from the minutes of the City Commission showing their passage and adoption, are attached to the petition as exhibits. Answer to the petition was filed by the State's Attorney on behalf of the State of Florida, and certain tax payers intervened and filed an answer.

"The respective bond issues of Miami and its component parts from time to time reflected by Exhibit 'W' which traces the bonds now sought to be validated to the time of original issue and indicates the interstitial relationship of those portions of the present city which enjoyed an independent existence prior to the consolidations in 1925.

"The $28,808,000.00 in bonds now sought to be validated represents:

The refunding of a portion of a former issue
    under City Resolution 9072, the validation of

which was affirmed in the Supreme Court
(157 So. 13) and to the extent of..................$26,445,000
Also a former refunding issue under resolution
No. 11725 for..........:................................ 1,432,000
Also another refunding issue evidenced by reso-
lution No. 11909 for $338,000 and $64,000
totaling ...........,.................................... 402,000
Also bonds of original issue issued prior to
Sept. 8, 1925, by the original City of Miami.... 80,000
Also bonds issued subsequent to Sept. 8, 1925,
by the original City of Miami for..................... 5,000
Also bonds of the Greater Miami area issued
subsequent to Sept. 8, 1925, for....................... 444,000

                                                    $28,808,000

"The refunding matter now before the court on behalf of
the City of Miami represents an original indebtedness
originally incurred as follows:

Original City of Miami..........................................$ 8,603,000
Coconut Grove area................................................ 309,000
Buena Vista area..................................................... 100,000
Silver Bluff area...................................................... .200,000
Greater Miami........................................................ 19,596,000

                                                    $28,808,000

"The resolution for refunding hereby sought to be vali-
dated specifies that same shall be pursuant to Chapter 15,772,
Laws of Florida of 1931, Section 8 of which reads as
follows:

" 'Section 8. Bonds issued under this Act may be ex-
changed for not less than an equal principal amount· and/or
accrued interest of indebtedness to be retired thereby, in-

cluding indebtedness not yet due, if the same be then redeemable or if the holders thereof be willing to surrender the same for retirement, but otherwise shall be sold and the proceeds thereof shall be applied to the payment of such indebtedness and/or accrued interest due or redeemable which may be so surrendered.'

"Section 9 of the Act provides for sale and conditions under which the bonds shall be sold, and Section 10 provides that same shall be sold for not less than 95% of par. Section 11 reads as follows:

" 'Section 11. In case of refunding bonds which are not exchanged for bonds outstanding but are sold, only such amount thereof shall be delivered as is necessary to provide for the payment of matured bonds and legally accrued interest and of such unmatured bonds as the holders thereof have agreed in writing to surrender upon payment of a sum not exceeding par and legally accrued interest.'—and the last sentence of Section 23 reads as follows:

" 'All refunding bonds issued pursuant to the provisions of this Act shall not be subject to any limitation or indebtedness prescribed by any statutes, charter or other special Act relating to the municipality.'

"Paragraph (a) of Section 58 of the city charter provides a limitation on the bonded debt of the city of 15% of the assessed valuation of all real and personal property as shown by the rolls of the preceding assessment, with exceptions.

"The assessment roll for 1938 amounted to $155,511,130, which after deducting exemptions allowed of $32,113,745, left a basic amount of $123,397,385.

"The last sentence of Section 23, quoted above, more than likely was intended to read 'limitation of indebtedness' instead of 'limitation or indebtedness' but the question before

the court is whether or not the above quoted sentence (Section 23) is in conflict with Section 58 of the city charter.

"It may not be decisive of the matter but it is noted that Chapter 15772 does not expressly provide that all laws or parts of laws in conflict be repealed; the Act was intended to be cumulative and remedial. If the charter provisions and the Act can be construed so as to give both effect, such should be done. I find that it was not the intent of the Act to permit a violation of the City Charter provisions on the limitation of bonded indebtedness. It was intended only to facilitate the refunding of existing bonded debt.

"The question before the Court is whether or not the City of Miami with its existing bonded debt which considered together with the charter limitations as found in Section 58 thereof, is entitled to have validated its proposed bond issue pursuant to Chapter 15772, Acts of 1931, when by its authorizing resolutions it seeks at its option to either sell such issue and retire the old bonds or exchange these new bonds for the outstanding issue.

"It appears improper for the Court to validate bonds which, pursuant to the resolutions authorizing same, could be outstanding at a time when the prior bonds might likewise be outstanding, without more assurance from the authorizing resolutions provided for and insuring the application of the proceeds of the new issue, in event *of sale*, to the liquidations of the former issues.

"When the bonded debt limit is reached, the authorizing resolutions should so govern the refunding issue as to insure that refunded issue and the refunding issue are not to be outstanding at the same time when either issue reaches the debt limitation and the two will exceed it. For such to occur would be a violation of the charter and the court's

decree validating same would be improper, for both could not be valid—that exceeding the limitation would be invalid. The court is not supposed to validate that which *might* result in validity; it is required to validate that which *is* to be valid when the authorizing resolutions are complied with and conformed to. Such resolutions in this instance would permit, even when complied with, a violation of the charter limitations.

"Whereof, in consideration of the premises, it is ORDERED, ADJUDGED AND DECREED that the petition for validation be and the same is hereby denied and dismissed.

"DONE AND ORDERED in Chambers, at Miami, Florida, this 6th day of May, A. D. 1939.

"PAUL BARNS, Circuit Judge."

The City and the intervenors, not including the taxpaying intervenors, appealed, making the State and the taxpaying intervenors appellees, and assigned as errors:

"1. * * * in rendering and entering the said order.

"2. * * * in denying the petition filed herein by the said City, October 3, 1938.

"3. * * * in dismissing the said petition.

"4. * * * in decreeing that the resolutions of which certified copies are attached to the said petition as Exhibits 'A', 'C', 'D' and 'E' would permit a violation of the charter of said City.

"5. * * * in failing to decree that the said City is authorized to issue the refunding bonds provided for in the said resolutions.

"6. * * * in failing to validate and confirm the refunding bonds authorized in the said resolutions."

The five intervenor taxpayers assign as cross errors: (1) denying their motion to dismiss the plaintiff's petition; and

(2) and (3) striking from intervenors' answer certain portions thereof.

Appellants present as questions involved:

"1. When the valid bonded debt of a city exceeds the limit established by its 1925 charter, which authorizes the issuance of bonds for any municipal purpose up to 15% of the current assessed valuation of the taxable property, and the City undertakes to materially reduce the average annual interest rate, by authorizing the issuance and sale of refunding bonds, under Section 6, Article IX, of the Constitution, and the General Refunding Act of 1931, to obtain funds to be applied solely in redemption of the outstanding callable bonds, can the charter limitation be violated by the sale of the refunding bonds, because they, together with the bonds to be refunded, may all be temporarily outstanding, until the redemption shall actually be effected?

"Affirmative answer by the circuit court.

"13. When properly certified copies of resolutions authorizing refunding bonds are admitted in evidence, together with a properly certified copy of excerpts from the minutes of the city commission,, showing the adoption of the resolutions by the commission, and there is no evidence that they were not adopted, has the adoption of the resolutions been sufficiently proven?

"Affirmative answer by circuit court."

Twenty-one other questions are stated, and under each such question the following appears: ·"Not answered by the circuit court."

In appellants' brief it is stated:

"* * * In order that the refunding may be expedited, and also for the purpose of obviating the necessity of further litigation and a second appeal, the appellants urge that the

jurisdiction conferred on this Court in Sec. 4637 C. G. L., 'to give such judgment, sentence or decree as the court below ought to have given,' be exercised on this appeal, and earnestly request the Court to consider and decide all of the issues, including that on which the case was disposed of by the circuit court, and to render a decree validating and confirming the refunding bonds."

The quoted statutory provision should not be so applied as to give this Court original equity jurisdiction of substantive matters not considered by the chancellor in rendering the decree appealed from.

Appellees state:

"ADDITIONAL QUESTION No. 1. Did the court err in denying motion of the intervening defendants to dismiss petitioners' bill of complaint for the reasons and grounds set forth in the motion to dismiss, which said motion appears in grounds numbered 1 to 28 embodied in the answer of the intervening defendants and constitutes a part of said answer?

"ADDITIONAL QUESTION No. 2. Did the court err in striking from the answer of the intervening defendants that paragraph which is identified in the motion to dismiss (and) in the court's order as paragraph 10?

"ADDITIONAL QUESTION No. 3. Did the court err in striking that portion of the answer of the intervening defendants reading as follows, to-wit:

" 'These defendants further answering aver that the proposed new issue of bonds and the plan or arrangement under which they are issued is not a plan to extend and continue the indebtedness of the existing bonds, and if validated, issued and sold would not extend and continue the indebtedness of the existing bonds, but, on the contrary, the issuance and validation of said new bonds and the sale thereof would be a device wherein and whereby bonds which will not mature

for many years will be accelerated and precipitated upon the taxpayers of the City of Miami, and immediate and heavier burdens will be imposed upon them.' "

The petition seeking municipal bond validation alleges: that petitioner now has outstanding a bonded indebtedness in the principal amount of $28,808,000 bearing an average interest rate of approximately 4.98 per centum per annum, and petitioner is desirous of refunding said indebtedness through the sale and exchange of refunding bonds in order to effect a saving in interest costs upon said indebtedness."

"The refunding bonds herein sought to be validated are to bear interest at such rates not to exceed 4½ per centum per annum as may hereafter be fixed by resolution of the city commission of petitioner, and the principal and interest of said refunding bonds will be payable in New. York City, N. Y., at the times set forth therein."

In their answer the taxpayer intervenor defendants definitely challenge the legality and the sufficiency of the proceedings for the refunding bond issues.

The bonds to be refunded were issued not in excess of the 15% charter debt limit. The fact that at a subsequent date when tax valuations were lower, the aggregate of outstanding bonds did exceed the 15% debt limitation, does not affect the validity of the bonds.

The resolution, No. 14358, adopted by the city commission, under which it is sought to refund the greater part of the bond indebtedness of the city, after describing in detail the nature of the proposed issuing of, and the numbers and dates of maturities of, the refunding bonds, and giving other data with reference to the bonds sought to be. issued, contains the following:

"Section 2. Refunding Bonds, Issue of January 1, 1938, in the principal amount of $27,647,000, are hereby author-

ized to be issued pursuant to Chapter 15772, Laws of Florida, 1931, for the purpose of refunding the principal of all bonds described in Section 1 hereof and any judgments heretofore or hereafter recovered thereon. Taxes sufficient to produce the sums required for the payment of principal and interest of said refunding bonds will be levied upon all property within the present territorial limits of the City of Miami which was not exempted from municipal taxation by the Constitution of the State of Florida as it existed immediately prior to November 6, 1934, and all of such property shall be subject to the specific tax levies hereinafter directed to be made. Said refunding bonds shall be dated January 1, 1938, and shall mature July 1, of each of the years set forth below in the amounts set opposite thereto:

| Maturity | Amount | Maturity | Amount |
|---|---|---|---|
| 1939 | $ 350,000 | 1951 | $1,250,000 |
| 1940 | 375,000 | 1952 | 1,300,000 |
| 1941 | 450,000 | 1053 | 1,350,000 |
| 1942 | 575,000 | 1954 | 1,400,000 |
| 1943 | 685,000 | 1955 | 1,460,000 |
| 1944 | 700,000 | 1956 | 1,533,000 |
| 1945 | 810,000 | 1957 | 1,730,000 |
| 1946 | 855,000 | 1958 | 1,800,000 |
| 1947 | 1,220,000 | 1959 | 1,870,000 |
| 1948 | 1,150,000 | 1960 | 1,945,000 |
| 1949 | 1,150,000 | 1961 | 2,025,000 |
| 1950 | 1,200,000 | 1962 | 491,000 |

Refunding bonds maturing in the years 1952 to 1962, inclusive, shall be subject to redemption prior to maturity in the inverse order of maturities on any interest payment date upon payment of the par value thereof and accrued interest to the date fixed for redemption. In the event all the bonds of the then latest outstanding maturity should not

be called for redemption, the particular bonds of such maturity to be redeemed shall be determined by lot. The refunding bonds shall be redeemed only after notice of redemption setting forth the numbers and maturity or maturities of the particular bonds to be redeemed and the date fixed for redemption shall have been published in a financial newspaper published in the City of New York, N. Y., once a week for four consecutive weeks, the date of the first publication of such notice to be at least thirty days prior to the date fixed for redemption. Refunding bonds other than those maturing in the years 1952 to 1962, inclusive, shall not be subject to redemption prior to maturity. Said refunding bonds shall be issued in denominations of $1,000 each to be numbered as may hereafter be directed and shall bear interest at such rates not to exceed four and one-half per centum per annum as may hereafter be fixed by resolution of the city commission, and shall be issued in such amounts and of such above described maturities and from time to time as may be determined by the city commission, and it shall not be necessary for all refunding bonds to bear the same rate of interest. Said refunding bonds shall be exchanged in whole or in part for an equal principal amount of outstanding bonds described in Section 1 hereof or shall be sold in whole or in part in conformity with the provisions of Chapter 15772, Laws of Florida, 1931, and the proceeds derived from such sale applied to the retirement, redemption or payment of said outstanding bonds. Interest upon said refunding bonds shall be payable semi-annually January 1 and July 1 to be evidenced by coupons attached thereto, and both principal and interest shall be payable at the Chemical Bank & Trust Company in the City of New York, N. Y., in lawful money of the United States of America. Said refunding bonds shall be registerable as to

principal alone or as to both principal and interest in accordance with the provisions endorsed thereon.

"SECTION 3. The refunding bonds herein authorized to be issued shall be signed by the Mayor and City Clerk of the City of Miami and attested by the Director of Finance, and the corporate seal of the City of Miami shall be affixed thereto. The interest coupons thereto attached shall be executed with the fac-simile signature of said City Clerk. The text of said bonds shall be in substantially the following form, except that refunding bonds maturing in the years 1952 to 1962, inclusive, shall contain the following additional paragraph: 'The City of Miami, Florida, hereby reserves the right to redeem this bond and other bonds of the issue of which this is a part maturing in any of the years 1952 to 1962, inclusive, in the inverse order of maturities on any interest payment date upon payment of par and accrued interest, and in the event all bonds of the then latest outstanding maturity are not called for redemption, the particular bonds of such maturity to be redeemed shall be determined by lot. In the event this bond is so called for redemption, notice thereof shall be published in a financial newspaper published in the City of New York, N. Y., once a week for four consecutive weeks, the date of the first publication to be at least thirty days prior to the date fixed for redemption, and if this bond should not be presented for payment on the date so fixed for redemption, it shall cease to bear interest from and after said date.':

"UNITED STATES OF AMERICA

"STATE OF FLORIDA

"CITY OF MIAMI

"REFUNDING BOND

"ISSUE OF JANUARY 1, 1938

"No.———                                                                $1,000

"The City of Miami in Dade County, Florida, is justly

indebted and for value received hereby promises to pay to bearer, or if this bond be registered, to the registered owner hereof, on the first day of July, 19—— the principal sum of ONE THOUSAND DOLLARS ($1,000.) together with interest thereon from the date hereof at the rate of —— per centum per annum until the payment hereof, said interest being payable semi-annually on the first days of January and July in each year. Both principal and interest hereof are payable in lawful money of the United States of America at Chemical Bank & Trust Company in the City of New York, N. Y., upon presentation and surrender of this bond and the interest coupons hereto attached as they severally mature.

"This bond is issued under the authority of and in full compliance with the Constitution and statutes of the State of Florida, including Section 6 of Article IX of the Constitution as amended in 1930, the General Refunding Act of 1931 and the Charter of the City of Miami and pursuant to resolutions passed by the City Commission of said City of Miami for the purpose of refunding valid subsisting funded debt of said City incurred while the City existed with different territorial limits as shown by the resolution authorizing the issuance of this bond.

"It is hereby certified and recited that all acts, conditions and things required to happen, exist and be performed, precedent to and in the issuance of this bond, have happened, exist and have been performed in due time, form and manner as required by the Constitution and laws of the State of Florida; that the total indebtedness of said City, including this bond, does not exceed and that the total indebtedness of said City at the creation of the indebtedness refunded hereby, including said indebtedness, did not then exceed, any constitutional or statutory limitation thereon,

and for the prompt and full payment of this bond, and the interest thereon, the full faith, credit and resources of said City are hereby pledged.

"The City of Miami covenants with the holder of this bond that for the payment of the principal and interest thereof it will levy taxes in an amount sufficient to provide therefor upon all property within the present territorial limits of said City, excepting only that property which was exempted from municipal taxation by the Constitution of Florida as was in force and effect immediately prior to November 6, 1934. The City further covenants that all taxes levied for the payment of the principal and interest hereof, including taxes upon homesteads, will be collected in cash at the same time and in the manner as operating and governmental ad valorem taxes levied by said city, and the rights and remedies for the enforcement of the indebtedness refunded hereby shall appertain to this bond and the taxes securing the same independently of any restrictions or limitations thereon enacted by the Legislature of the State of Florida or ratified by the people thereof November 6, 1934, or thereafter.

"This bond may be registered as to principal alone, or as to both principal and interest, in accordance with the provisions endorsed thereon.

"IN WITNESS WHEREOF, said City of Miami has caused this bond to be signed by its Mayor and City Clerk and attested by its Director of Finance under its corporate seal and the interest coupons hereto attached to be executed with the fac-simile signature of said City Clerk, all as of the first day of January, 1938.

"ATTEST:

"Mayor

"————————————————
"Director of Finance

"City Clerk

"(VALIDATION CERTIFICATE)

"Validated and confirmed by decree of the Circuit Court of the Eleventh Judicial Circuit of the State of Florida in and for Dade County, rendered ........................ ........, 19.......

"........................................................

*"Clerk of said Circuit Court."*

\* \* \* "SECTION 4. For the payment of both principal and interest of said Refunding Bonds, the full faith, credit and resources of the City of. Miami are hereby irrevocably pledged and it is hereby directed that there be annually levied and collected, as long as any of said Refunding Bonds may be outstanding, a separate and special tax, sufficient to produce the sums required for the payment of principal and interest of said Refunding Bonds as such principal and interest mature. The sums required to be paid on account of said Refunding Bonds on the first day of July in each fiscal year will be raised by the levy of taxes for the preceding fiscal year in an amount sufficient to produce such sums on or before said first day of July. In determining the amount of taxes to be levied for any fiscal year in order to produce the amounts required for the payment of principal and interest of said Refunding Bonds, the City shall first determine the amount of money actually collected during the next preceding fiscal year from taxes levied for such next preceding fiscal year and prior fiscal years and ascertain what percentage such collections are. of the total amount of taxes levied for such next preceding fiscal year. If the percentage so ascertained equals or exceeds 100%, the City shall levy taxes for the fiscal year then being levied for in an amount at least equal to the amount required for the payment of principal and interest of the Refunding Bonds for which such levy may be made; but if such per-

centage so ascertained is less than 100%, the City shall levy such amount of taxes for the fiscal year then being levied for, which, if collected only in the percentage so ascertained, would produce not less than the amount required to be raised for the payment of principal and interest of the Refunding Bonds for which such levy may be made. The proceeds of such taxes and the proceeds of all special assessments heretofore pledged to the outstanding bonds described in Section 1 hereof will be paid into a special fund which will be used solely for the payment of principal and interest of said Refunding Bonds. If during any fiscal year, the proceeds of taxes levied pursuant to this section are in excess of the principal and interest requirements of said Refunding Bonds, then the amount of such excess shall be set aside in said special fund and the City, so long as there shall be outstanding Refunding Bonds issued under this resolution which are redeemable prior to maturity, shall be obligated to apply forthwith said excess monies to the redemption of outstanding Refunding Bonds redeemable prior to maturity, in the manner hereinbefore prescribed, provided that the City will not be obligated to redeem outstanding Refunding Bonds prior to maturity until such proceeds have accumulated to the extent of $50,000.

"SECTION 5. All tax levies required to be made hereunder for the payment of principal and interest of the Refunding Bonds authorized hereby, shall constitute special levies for the particular purposes for which they are imposed. Such tax levies, while constituting special levies, will be collected at the same time and in the same manner as other taxes which may be levied by the City, and upon collection will be immediately segregated and credited to a special fund for payment of principal and interest of said Refunding Bonds. The City covenants that it will set aside

daily out of the proceeds of its tax collections, including the moneys derived from the sale or transfer of tax certificates and tax deeds, the proper proportionate amount thereof applicable to the Refunding Bonds. All moneys so credited to such special fund will be forthwith deposited with a City depository and held by it in trust for the payment of the principal and interest of said Refunding Bonds.

"Section 6. The City covenants that it will not accept payment of any tax or part thereof levied against any parcel of property for operating or governing the City unless all taxes levied against the same parcel of property for the payment of the Refunding Bonds authorized hereby are paid at the same time.

"Section 7. The City hereby covenants that it will actively and diligently enforce the collection of all taxes heretofore and hereafter levied, and that it will not accept anything but lawful money of the United States of America in payment or satisfaction of the taxes required to be levied or pledged hereunder for the Refunding Bonds authorized hereby.

"Section 8. The City hereby covenants that notwithstanding Section 7, Article X, of the Constitution of the State of Florida, added thereto by amendment ratified November 6, 1934, and any legislation enacted pursuant thereto, it will levy taxes upon all homesteads embraced within the territorial limits of the City for the payment of the Refunding Bonds authorized hereby to the same extent as other property in the City may be liable to taxation therefor.

"Section 9. Anticipated collections of delinquent taxes and special assessments will not be considered as revenue

available for the payment of the principal or interest of the Refunding Bonds in preparing the budget of the City or in fixing the tax levy for any fiscal year, but the City covenants that all moneys received by it through the collection of delinquent taxes and special assessments will be used for it for the purpose for which they are pledged hereby.

"SECTION 10. The City hereby covenants that so long as any of the Refunding Bonds authorized hereby may be outstanding, it will not avail itself of the provisions of any existing legislation or legislation which may be hereafter enacted by the Legislature of the State of Florida' in any way impairing or modifying the obligation of the City on the Refunding Bonds authorized hereby or the covenants of the City contained herein.

"SECTION 11. The City Attorney is hereby instructed and directed to institute the proper proceedings for the purpose of having adjudicated the validity of the Refunding Bonds authorized hereby and the validity and effectiveness of each and every covenant and provision contained herein.

"SECTION 12. All resolutions or parts of resolutions, heretofore adopted, in conflict herewith, are equally repealed to whatever extent they are in conflict herewith.

"SECTION 13. It is hereby determined and declared that the preservation of the peace, health, safety and property of the City and its citizens are dependent upon the immediate taking effect of this resolution, and there existing an urgent public need, this resolution is declared an emergency measure and it shall be in full force and effect immediately upon its passage. It shall not be necessary to submit this resolution or the issuance of the Refunding Bonds herein provided for, to a vote of the people.

"PASSED AND ADOPTED this 27th day of July, A. D. 1938."

Resolutions No. 14359, 14360, and 14361 contain quite similar provisions relative to the remainder of the refunding bonds sought to be issued.

It is not necessary to discuss the authenticity of the resolutions alleged to have been adopted by the City Commissioners relative to the issuing of the refunding bonds in this case.

As in effect stated in the decree of the Chancellor shown above, the main question to be determined is, in view of the challenges made, the legal sufficiency of the resolutions adopted by the city commissioners in stating the administrative procedure relating to the rights and liabilities of the interested parties, upon which the several classes of refunding bonds may be issued and exchanged, or sold, paid for and delivered for the purchase, cancellation and retirement of an equal principal amount of the bonds to be refunded, all with appropriate interest coupons, the interest on the refunded bonds to cease as and when the proper·corresponding refunding bonds with appropriate interest coupons attached are delivered in exchange or on sale and payment for refunding purposes.

The Special Miami Refunding Act of 1931, Chapter 15686, was enacted after the indebtedness of the bonds here sought to be refunded had been incurred, and the special Act should be given its proper effect where there are any inconsistencies between the general refunding Act of 1931, Chapter 15772, and the Miami Special Refunding Act of 1931. Section 24, Article III of the Constitution gives the rule of statutory application in this class of cases. The 1934 Amendment to Section 24, Article III does not become effective until the Legislature divides the municipalities of the State into classes required by the amendment. See State v. Alsop, 120 Fla.

628, 163 So. 80; State v. Jones, 121 Fla. 216, 163 So. 590; State v. Town of Belle Glade, 121 Fla. 200, 163 So. 564; State v. Emerson, 126 Fla. 576, 171 So. 663; State v. Ault, 129 Fla. 686, 176 So. 789.

There can be no implied powers in Chapter 15772, the General Refunding Act of 1931, that are inconsistent with Chapter 15686, the Miami Special Refunding Act of 1931, Section 24, Article III, Constitution, controlling the application of statutes; and the latter Act was intended to apply to the then existing bonded indebtedness of the City of Miami. The general Act may be complete in itself, but if it operates in a municipality having a special Act conferring authority to refund its indebtedness that contains some provisions with which the general law on the same subject is inconsistent, the provisions of the special law control under Section 24, Article III of the Constitution.

"The latter part of Section 6, Article IX, of the Constitution, as amended in 1930, is not confined to bonds to refund bonds that have been refunded, but excepts from the operation of the prior part of the section the issue of bonds to refund any county, district or municipal *bonds* or the interest thereon, when the refunding bonds to be issued are designed merely to extend the time for the payment of the indebtedness represented by the bonds or the interest thereon that are refunded." State v. City of Miami, 100 Fla. 1388, 131 So. 143.

The debt limit of governmental and taxing units cannot be extended by the process of bond refunding, unless the debt limit is extended by competent lawmaking authority. Nor can an indebtedness that has the effect of a bond obligation to be paid by taxation, be incurred by counties, municipalities or districts, or other governmental or taxing

units in this State, except authorized refunding bonds to continue the obligation of an existing bond debt, unless and until there has been duly obtained an approving vote of the electorate of the particular unit, as is mandatorily required by Section 6, Article IX of the Florida Constitution, as amended in 1930. See State *ex rel.* v. City of Miami, 100 Fla. 1388, 131 So. 143; Sullivan v. City of Tampa, 100 Fla. 298, 134 So. 211; State v. County of Citrus, 116 Fla. 676, 157 So. 4; State v. Spec. Tax Sch. Dist., 107 Fla. 93, 144 So. 356; Folks v. Marion County, 121 Fla. 17, 163 So. 298; Fahs v. Kilgore, 136 Fla. 701, 187 So. 170; State v. City of Pensacola, 123 Fla. 311, 166 So. 851; State v. City of Fort Pierce, 133 Fla. 424, 182 So. 799; State v. City of Okeechobee, 99 Fla. 617, 127 So. 339.

Such amended Section 6, Article IX of the Constitution does not contemplate that refunding bonds shall be issued without the required approval of the electorate, except to continue only the actual legal existing indebtedness, having the effect of a duly authorized bond debt of the particular governmental or taxing unit, *as* such indebtedness was originally incurred, without pledges of any additional tax or property or mortgage resources. State *ex rel.* v. City of Miami, 100 Fla. 1388, 131 So. 143. Reductions in the interest rates of the bonds refunded may be made in refunding bonds; and dates of payments of the bonds and interest thereon may extended or otherwise changed provided no greater burden of taxation may thereby be imposed.

The cited organic provision contemplates that refunding bonds may be exchanged for equal amounts of the principal of the bonds refunded, though the interest rates of the refunding bonds may be less than the interest rates of the refunded bonds. And with this controlling principle in

.view, refunding bonds to continue the existing bond debt on like terms may be sold and the entire proceeds thereof promptly invested in the purchase of outstanding bonds that are designed by the law and the refunding proceedings to be refunded, provided the price at which the refunding bonds are sold and the price at which the refunded bonds are purchased do not result in an increase in the outstanding bond indebtedness to be paid by taxation in the particular governmental or taxing unit.

The constitutional provisions referred to do not contemplate that refunding bonds may be issued and sold except as and when the equal amounts in principal of the refunded bonds are promptly purchased for cancellation, with the proceeds of the refunding bonds so sold. All refunded bonds with all the then future interest coupons that should be received in exchange for refunding bonds and all bonds with unmatured coupons attached purchased with proceeds of refunding bonds sold, are by the intendments of the organic provision, required to be promptly cancelled and forever withdrawn from further sale, exchange or circulation by any means and for any purpose whatever. Otherwise there may be outstanding bonds in excess of the bonded debt limit, or bonds outstanding that have not been duly approved, or that are in excess of those bonds that have originally been approved by the electorate as required by the Constitution, for if refunded bonds and unmatured coupons are not wholly and permanently retired as and when an equal amount of bonds in principal of refunding bonds are exchanged for refunded bonds, or if equal amounts in principal with unmatured coupons of refunded bonds are not permanently retired as and when refunding bonds are sold, the intendments of the Constitution as to issuance of refunding bonds without the required approving vote of the electorate,

will be violated. See State v. Citrus County, 116 Fla. 676, 157 So. 4, 97 A. L. R. 431.

Matured or callable bonds with unmatured coupons thereon intended to be refunded by exchange for refunding bonds of equal amounts in principal, or to be paid with the proceeds of the refunding bonds sold for purposes of refunding or payment of bonds to be taken up, cancelled and retired, may be called for exchange or payment at a time permitted by the bond contract or agreed upon by the parties as and when the refunding bonds are ready for delivery or the proceeds of refunding bonds sold for refunding purposes will be on hand for the purchase of bonds to be refunded and cancelled and retired.

The controlling provision of the Constitution does not contemplate that the amounts of refunding bonds together with bonds intended to be refunded by the refunding law and proceedings, shall be outstanding in the hands of creditors of the particular unit for any appreciable time in excess of the amount of the bonds refunded or in excess of the debt limit of the unit. Otherwise the indebtedness would be increased without the required approval of the prescribed electorate vote required by the Constitution and the debt limit would be exceeded in violation of the limitations provided by law.

Duly authorized and legally reasonable expenses incurred in the process of refunding may be paid by the unit as a current expense; but the amount of no part of such expenses should be directly or indirectly in any form or manner added to the bonded or continuing indebtedness of the unit unless it is duly approved by the vote required by Section 6, Article IX of the Constitution, as amended in 1930.

The cited organic provision and the bond refunding statutes contemplate that bonds shall be refunded only when

the best interests of the bonding unit and its citizens and taxpayers will be thereby substantially conserved and advanced.

The law does not contemplate that unmatured though callable bonds shall be refunded at large expense unless the tax burdens pledged to pay the bonds shall thereby be materially lightened by postponing payments or principal, by substantial reduction in interest rates or otherwise be financially and economically beneficial in a substantial degree to the general welfare of the taxpayers and citizens of the particular governmental or taxing unit.

When governmental refunding bonds are to be issued without an approving vote of the prescribed electorate under amended Section 6 of Article IX, the Constitution contemplates that every requirement of law affecting such bond issues shall be duly, properly and fully performed with substantial accuracy. Each administrative step required by law to be taken in the issuance of governmental bonds in an official function required to be duly performed by authorized officers.

In view of the interest and rights of citizen taxpayers in the issuance of bonds to be paid by taxation, it cannot justly be said that in answer of taxpayer-intervenor defendants in a refunding bond validation proceeding, the following averments are improper:

"These defendants further answering aver that the proposed new issue of bonds and the plan or arrangement under which they are issued is not a plan to extend and continue the indebtedness of the existing bonds, and if validated, issued and sold, would not extend and continue the indebtedness of the existing bonds, but, on the contrary, the issuance and validation of said new bonds and the sale thereof would be a device wherein and whereby bonds

which will not mature for many years will be accelerated and precipitated upon the taxpayers of the City of Miami, and immediate and heavier burdens will be imposed upon them."

Such averments in this case should not have been stricken. The averments of the answer referred to in the cross-assignment of errors have not heretofore been adjudicated, and as they have some substantial and pertinent relation to the rights of taxpayers in the premises, they might well have been allowed to remain.

To prevent an unlawful indebtedness, no interest coupons shall be paid or left on bonds exchanged or sold by the municipality, except for interest at the bond rate from the date of the exchange or of the sale, payment and delivery of the refunding bonds; and interest on the refunded bonds should be paid only to the date of the exchange or of the purchase and delivery of the bonds for redemption; and there should be cancelled and retired all interest coupons except the current coupons on refunding bonds prior to the date of exchange or to the payment for the sale and delivery of the refunding bonds. Interest to the date of exchange or of sale, payment and delivery, represented by current coupons on the refunding bonds when they are exchanged or delivered on sale and payment, should be credited on the current coupons at delivery. When bonds are purchased for redemption, cancellation and retirement, interest thereon should be paid only to the date of delivery; and all current and future interest coupons that should be thereon, should be delivered with the refunded bonds, and both bonds and coupons should be duly listed of record and cancelled and permanently retired from circulation or any other use whatever.

When resolutions are adopted for guidance in issuing

governmental refunding bonds without an approving vote
of the electorate as required by Section 6, Article IX, Con-
stitution, as amended in 1930, such resolutions should ap-
propriately contain the essential administrative requirements
to be performed in the issue of such bonds, in order that
the legal rights and obligations of the parties to the bond
contracts may be fully and definitely made known for the
benefit of the taxpayers and the bondholders and in order
that the administrative duties of public officials may be fully
and definitely known and judicially enforced as contemplated
by the Constitution and laws of the State which are ap-
plicable in the premises.

The debt limit of the charter is controlling, since the
organic provisions for issuing governmental bonds do not
intend that the statutory debt limit shall be exceeded or
evaded; and the organic provisions that are applicable to
the refunding bonds involved in this case do not intend that
refunding bonds shall directly, indirectly, contingently or
otherwise, in any way whatever, increase the amount of the
indebtedness as limited and represented by the original
bonds, unless there is first obtained by due course of law
the approving vote of the required electorate as is expressly
provided and limited by Section 6, Article IX, Constitution,
as amended in 1930.

The statutes provide that the resolutions shall determine
the rate or rates of interest to be paid, not exceeding 6 per
centum per annum. The validation statute requires the
petition for validation to allege "the amount of the bonds
* * * to be issued, what interest they are to bear and when
and where principal and interest are to be paid." These
statutory requirements have not been complied with in the
resolutions or in the form of the proposed bonds or in the

allegations seeking validation of the bonds. If refunding bonds are to be issued without an approving vote of the prescribed electorate, the provisions of statutes and the intendments of the Constitution must be fully complied with before judicial validating decrees are rendered.

The case of State v. City of Orlando, 127 Fla. 280, 170 So. 887, is not a precedent, as the above point was not there stressed, and the facts did not require a specific adjudication of the matter with reference to the intendments of the Constitution and to the rule that all statutory requirements must be definitely complied with and the intendments of the Constitution must be strictly followed when refunding bonds are proposed to be issued without an approving vote of the electorate as is specifically provided for and is contemplated by amended Section 6, Article IX.

Similar comments may be made of Sullivan v. City of Tampa, 101 Fla. 298, 134 So. 211, as to the sale of refunding bonds below par and interest if the refunded bonds cannot be purchased at not above the same price for which refunding bonds are sold for refunding purposes. The essential facts there were different. Nothing is permissible, whether statutory or otherwise, that will directly, indirectly or in any way, exceed the debt limit, or that will in any way increase the bond indebtedness of the unit without the required electorate approval. See State v. County of Citrus, 116 Fla. 676, 157 So. 4; Boatright v. City of Jacksonville, 117 Fla. 477, 158 So. 42.

As is in effect stated in the chancellor's decree, the court should not "validate that which might result in validity; it is required to validate that which is to be valid, when the authorizing resolutions are complied with and conformed to."

The decree appealed from is affirmed.

TERRELL, C. J., and CHAPMAN and THOMAS, J. J., concur.

BUFORD, J., dissents.

BROWN, J., not participating.